**STATE of Minnesota, Respondent,**

v.

**Gerald Charles RASINSKI, Appellant.**

**No. C4–90–1010.**

Court of Appeals of Minnesota.

Dec. 24, 1990.

Review Granted Feb. 6, 1991.

518

Arden Fritz, Douglas G. Sauter & Associates, P.A., Coon Rapids, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Robert A. Stanich, Sp. Asst. Atty. Gen., St. Paul, James T. Reuter, Chisago County Atty., Center City, for respondent.

Considered and decided by HUSPENI, P.J., DAVIES and NIERENGARTEN,* JJ.

## OPINION

HUSPENI, Judge.

Appellant Gerald Charles Rasinski challenges his conviction and sentence for two counts of criminal vehicular operation resulting in death. He assigns a number of errors including evidentiary rulings, sufficiency of the evidence, the sentence of the court, and the court's denial of his demand to execute his stayed sentence. We affirm as modified.

## FACTS

Early on the morning of July 4, 1989, appellant's van collided with a vehicle driven by Brett Callan while traveling eastbound on Highway 8 in Chisago County. Mr. Callan and his passenger, Wayne Faris, were killed in the accident. At the time of the collision, appellant's vehicle was traveling eastbound in the westbound lane of traffic.

Earlier on the evening of July 3, 1989, appellant finished work at 8:30 p.m., and purchased a case of beer in an Elk River liquor store. After placing the beer in a cooler in the back of his van, appellant drove to Lake Orono where he testified he drank two beers, which were provided by others already at the lake. He ate nothing while at the lake, left at approximately 10:30 p.m., and headed to Anoka.

On the way to Anoka, appellant stopped to ask his friend, Randy Steen, whether he would like to go to a party. Steen agreed and he, together with two other friends, followed appellant home and joined him in the van. While appellant drove to the party, the passengers drank beer. Appellant admits having a third beer when the van stopped at a friend's home.

After resuming the journey and failing to locate the party in Blaine, appellant asked the passengers whether they wanted to go to Wisconsin to go fishing. The men initially agreed, but Steen changed his mind and asked to return to his car. Appellant stopped at a convenience store and consumed another beer while waiting for his friends to purchase "some munchies." Appellant returned to Elk River, dropped off the passengers and headed back toward Wisconsin at approximately midnight. According to appellant's testimony, he drank four beers between 8:30 p.m. and midnight without eating anything.

Appellant provided the following verbatim account of the accident:

* Wm. J. Nierengarten, acting as judge of the Court of Appeals by appointment pursuant to

Minn. Const. art. VI, § 2.

A. I remember seeing lights in front of me.

Q. Where?

A. In my lane in front of me up ahead.

Q. What did you do then?

A. I moved to the *right*, but there were headlights in front of me in the right, and then there was a car sliding sideways coming in front of me and I slammed on my brakes.

Q. Where were you when you slammed on your brakes?

A. I was in the other lane.

Q. Which lane?

A. The right lane.

Q. The right lane or the left lane?

A. The right lane.

Q. That would be your own lane?

A. I was in the west lane.

Q. Westbound lane?

A. Yeah.

Q. What were you over there for?

A. I was trying to avoid a car coming at me in my lane.

(Emphasis added.)

Officers at the scene testified that appellant had a strong odor of alcohol on his breath and red and watery eyes. At the hospital, following the reading of the implied consent advisory, appellant's blood was drawn. The hospital tested the blood and determined that it had a blood alcohol content of .16; the Bureau of Criminal Apprehension found a blood alcohol content of .13.

Shortly after the accident, Steen gave a statement to the police in which he stated that appellant told him he may have fallen asleep at the wheel. On cross-examination at trial, however, he testified he could not remember exactly what appellant said.

The highway patrol created a video re-enactment of the accident using sketches and measurements made by Trooper Hurd. Trooper Scott McAllen directed the production of the videotape. The short tape has two sections: the first section shows vehicles colliding at 55 m.p.h.;[1] the second section shows the accident in slow motion.

As a sanction for non-disclosure of her as a witness, the court refused to allow appellant's mother to testify. On rebuttal, the court allowed Trooper McAllen to challenge appellant's statements that he swerved into the westbound lane a split second before the collision.

Before imposing sentence, the court reviewed the presentence investigation report and victim impact statements, heard the statement of Keith Davis, a licensed clinical social worker called by appellant regarding appellant's alcohol problem, and listened to statements made by each member of the two victims' families. The court then imposed two consecutive eighteen month sentences. The court stayed the sentences and placed the defendant on probation for ten years (five years for each count sentenced). The court imposed numerous conditions of probation including 24 months in the county jail, no use of a motor vehicle, a psychological and alcohol evaluation, and writing a letter of apology to the victims' families. The district court denied appellant's motion to execute his sentence.

## ISSUES

1. Did the court err in its evidentiary rulings?

2. Was the evidence sufficient to convict appellant of criminal vehicular operation?

3. Did the trial court commit reversible error in sentencing?

4. Is appellant entitled to refuse probation and demand execution of his sentence?

## ANALYSIS

### I.

Did the trial court err in its evidentiary rulings?

■ This court will affirm trial court evidentiary rulings absent a clear abuse of discretion, *State v. Whiteside*, 400 N.W.2d

---

1. Testimony at trial showed that the vehicles were not traveling faster than the posted speed limit.

140, 144 (Minn.App.1987), *pet. for rev. denied* (Minn. Mar. 18, 1987) and will reverse a discovery sanction only for a clear abuse of such discretion. *State v. Lindsey*, 284 N.W.2d 368, 373 (Minn.1979).

### A. Videotape simulation

■ Appellant challenges the admission of a videotape simulation of the accident which the Minnesota Highway Patrol produced.[2] However, appellant did not object to the admission of the videotape at trial. Although this court may review plain error not objected to at trial, *State v. Malaski*, 330 N.W.2d 447, 451 (Minn.1983), we conclude that the admission of the videotape was not such an error; the admission did not violate a well-established constitutional right or evidentiary rule. *State v. Gullekson*, 383 N.W.2d 338, 341 (Minn.App.1986), *pet. for rev. denied* (Minn. May 16, 1986). First, contrary to appellant's argument, the tape was relevant. It had the "tendency to make the existence of any fact that is of consequence to the determination of the action more probable * * * than it would be without the evidence." Minn.R.Evid. 401. In this case, that consequential fact was how the accident occurred. Even "[a] slight probative tendency is sufficient under Rule 401." *Id.* committee comment. We also do not agree that the tape lacked foundation or improperly assumed facts not in evidence. The tape was produced using measurements taken at the scene by law enforcement officers trained in accident investigation and reconstruction. Although the record does not disclose the precise speed the vehicles were traveling at impact, testimony does show that the vehicles were not traveling faster than the posted 55 m.p.h. speed limit.

Further, *State v. Hopperstad*, 367 N.W.2d 546 (Minn.App.1985), relied upon by appellant, is distinguishable from this case. In *Hopperstad*, this court reversed a conviction in part due to the trial court's admission of a video re-enactment of an altercation at the jail. The video was based on the state's subjective version of the events that occurred. In this case, the highway patrol produced the videotape using objective evidence gathered at the accident scene.

### B. Suzanetta Rasinski testimony

Appellant contends that the court's exclusion of Ms. Rasinski's testimony violated his constitutional right to compulsory process under article I, section 6 of the Minnesota Constitution and the sixth amendment to the United States Constitution and violated his right to due process under the fourteenth amendment to the United States Constitution and article I, section 7 of the Minnesota Constitution. We disagree.

■ The trial court has discretion to impose sanctions for non-compliance with Rule 9.01 of the Minnesota Rules of Civil Procedure. *Lindsey*, 284 N.W.2d at 373. In exercising that discretion, the court should consider (1) the reason disclosure was not made; (2) the extent of prejudice to the opposing party; (3) the feasibility of rectifying the prejudice by continuance; and (4) any other relevant factors. *Id.* (citations omitted).

Rejecting the argument that preclusion of testimony is never an appropriate sanction under Rule 9, the United States Supreme Court in *Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) stated:

> It is elementary, of course, that a trial court may not ignore the fundamental character of the defendant's right to offer the testimony of witnesses in his favor. But the mere invocation of that right cannot automatically and invariably outweigh countervailing public interests. The integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence; the interest in the fair and efficient administration of justice; and the potential prejudice to the truth-determining function of the trial process must also weigh in the balance.

---

**2.** The accident reconstructionist produced the tape using measurements, placement of the skid marks and the final resting place of the vehicles taken at the scene.

*Id.* at 414–15, 108 S.Ct. at 655 (footnote omitted).

■ We do not find the *Lindsey* factors to be inconsistent with the *Taylor* considerations. Thus, applying the *Lindsey* factors, we conclude that the trial court did not abuse its discretion by excluding Ms. Rasinski's testimony as a discovery sanction. Appellant's trial counsel was aware of her proposed testimony before trial, but did not include her name on the witness list. Without an opportunity to investigate Ms. Rasinski's testimony before the close of trial, the state could have been severely prejudiced. Finally, Ms. Rasinski's testimony was proffered to impeach Steen's assertion that appellant told him that he may have fallen asleep at the wheel. We note that defense counsel had an ample opportunity to cross-examine Steen on that exact point and forced him to concede that he could not remember precisely what appellant told him.

### C.  Trooper McAllen testimony

■ Appellant argues that the court improperly allowed Trooper McAllen to testify as a rebuttal witness. The state has no obligation to provide the name of a rebuttal witness before trial. *State v. Anderson*, 405 N.W.2d 527, 531 (Minn.App. 1987), *pet. for rev. denied* (Minn. July 22, 1987).

> Rebutt[al] evidence means, not merely evidence which contradicts the witnesses on the opposite side and corroborates those of the party who first presented evidence bearing on the issue, but *evidence in denial of some affirmative fact which the answering party has endeavored to prove.* Where the purpose of evidence is clearly rebuttal, the party offering it is entitled to have it admitted.

4 *Jones on Evidence* § 24:1, at 74 (1972) (emphasis added). McCormick states that a plaintiff presenting rebuttal evidence

> is not entitled to present at this stage witnesses who merely support the allegations of the complaint, but is confined to testimony which is directed to refuting the evidence of the defendant.

E. Cleary, *McCormick on Evidence* § 4, at 7 (3d ed. 1984).

Contrary to appellant's argument that Trooper McAllen's testimony was offered merely to corroborate the state's earlier testimony, we conclude that the testimony was offered to rebut appellant's assertion of an oncoming vehicle in his lane as an explanation for the collision. Moreover, appellant's request of an earlier witness to "work the formulas" opened the door to the testimony in which Trooper McAllen applied the mathematical speed/stopping distance formulas. We find no abuse of discretion.

### II.

Was the evidence sufficient to convict appellant of criminal vehicular operation resulting in death?

■ When reviewing an insufficiency of evidence claim, this court, viewing the evidence in the light most favorable to the prosecution, "must determine whether, under the facts in the record and any legitimate inferences that can be drawn from them, a jury could reasonably conclude the defendant was guilty of the offense charged." *State v. Bias*, 419 N.W.2d 480, 484 (Minn.1988) (citing *State v. Race*, 383 N.W.2d 656, 661 (Minn.1986)). In order for the jury to convict the defendant of criminal vehicular operation resulting in death, it must find that the defendant operated a motor vehicle:

> (1) in a grossly negligent manner;
> (2) in a negligent manner while under the influence of alcohol, a controlled substance, or any combination of those elements; or
> (3) in a negligent manner while having an alcohol concentration of .10 or more.

Minn.Stat. § 609.21, subd. 1 (1988). Thus, in order for the jury to convict under either subsection 2 or 3, the state had the burden of proving both intoxication and negligence. *State v. VanWert*, 442 N.W.2d 795, 797 (Minn.1989). In this case, appellant argues that the mere fact that his vehicle was traveling eastbound in the westbound lane is insufficient to establish negligence and that he swerved into the westbound

lane to avoid an oncoming vehicle in his lane. However, the record does not provide any evidence supporting appellant's claim of an oncoming vehicle. The physical evidence gathered at the accident scene and the opinions developed based on the evidence show that appellant was traveling in the wrong lane before impact. The accident reconstructionist testified that the victims' vehicle took evasive action first. Furthermore, appellant presented no physical evidence of the alleged sudden swerve from the eastbound into the westbound lane.

Steen testified that he warned appellant not to go to Wisconsin, that appellant told him after the accident that he might have fallen asleep at the wheel, and that appellant was drinking while driving. Other testimony showed that a recently opened can of beer was found in the front seat of the van along with a number of empty cans scattered in the rear of the van. We conclude that the jury had ample evidence of negligence upon which to conclude that appellant was guilty of criminal vehicular operation.

### III.

Did the court commit reversible error in sentencing?

Minn.R.Crim.P. 28.05, subd. 2 provides: On appeal of a sentence, the court may review the sentence imposed or stayed to determine whether the sentence is inconsistent with statutory requirements, unreasonable, inappropriate, excessive, unjustifiably disparate, or not warranted by the findings of fact issued by the sentencing court.

As this court stated in *Massey v. State*, 352 N.W.2d 487 (Minn.App.1984), "[t]he trial court is in [the] best position to weigh the various sentencing options and therefore is granted broad discretion in sentencing." *Id.* at 489 (citations omitted).

■ First, appellant argues that the court erred by imposing consecutive stayed sentences. "[T]he trial court may impose

one sentence per victim in multiple victim cases so long as the multiple sentences do not unfairly exaggerate the criminality of the defendant's conduct." *State v. Montalvo*, 324 N.W.2d 650, 652 (Minn.1982). The sentencing guidelines provide that:

Consecutive sentences may be given only in the following cases:

\*     \*     \*     \*     \*     \*

2. When the offender is convicted of multiple current felony convictions for crimes against different persons, and when the sentence for the *most severe current conviction is executed according to the guidelines.*

\*     \*     \*     \*     \*     \*

The use of consecutive sentences in any other case constitutes a departure from the guidelines and requires written reasons pursuant to Minn.Stat. § 244.10, subd. 2 and section E of these guidelines.

Minn.Sent.Guidelines II.F (emphasis added). The sentence for criminal vehicular operation was not "executed according to the guidelines," as the phrase is interpreted by the supreme court in *State v. Lindsey*, 314 N.W.2d 823, 825 (Minn.1982).[3] Instead the court stayed the sentence. The court's decision to sentence consecutively therefore constitutes a departure requiring reasons.

In *Williams v. State*, 361 N.W.2d 840 (Minn.1985), the supreme court adopted guidelines for reviewing departures from presumptive sentences:

2. If reasons supporting the departure are stated, this court will examine the record to determine if the reasons given justify the departure.

3. If the reasons given justify the departure, the departure will be allowed.

4. If the reasons given are improper or inadequate, but there is sufficient evidence in the record to justify departure, the departure will be affirmed.

5. If the reasons given are improper or inadequate and there is insufficient evi-

---

**3.** The supreme court ruled that section II.F.2 means "when the sentence for the most severe current conviction is, according to the guide-

lines, required to be executed and not stayed." *Id.*

dence of record to justify the departure, the departure will be reversed.

*Id.* at 844.

■■■■ Appellant argues that the trial court inappropriately cited appellant's three alcohol-related offenses since 1983 as a factor supporting departure. We cannot agree. The DWI offenses have not been included in appellant's criminal history score. In addition, the trial court's consideration of appellant's history of alcohol abuse is a valid consideration in deciding to depart. *State v. Loitz*, 366 N.W.2d 744, 747 (Minn.App.1985), *pet. for rev. denied* (Minn. July 17, 1985).[4]

■■■■ Second, appellant contests the trial court's stacking of probationary periods. Minn.Stat. § 609.135, subd. 2(1) (1988), provides that a period of probation may not exceed the "maximum period for which the sentence of imprisonment might have been imposed." In this case, the maximum penalty for one count of criminal vehicular operation resulting in death was five years. Minn.Stat. § 609.21, subd. 1. The court placed appellant on probation for 10 years.

In *State v. Aleshire*, 451 N.W.2d 66 (Minn.App.1990), *pet. for rev. denied* (Minn. Apr. 13, 1990), this court sanctioned the stacking of consecutive probationary periods. *Id.* at 68. In *Aleshire*, the defendant was convicted of two gross misdemeanors,[5] was sentenced to two consecutive stayed sentences and was placed on two consecutive two-year periods of probation (for a total probationary period of 4 years). Noting that a single gross misdemeanor sentence may not be stayed for more than two years under Minn.Stat. § 609.135, subd. 2(2), the court sanctioned a probationary period of four years. *Ale-*

*shire*, 451 N.W.2d at 68. We find the analysis in *Aleshire* persuasive, and in applying that analysis to this case, we conclude that the trial court did not abuse its discretion by imposing consecutive periods of probation.[6]

■■■■ Third, appellant challenges the imposition of consecutive periods of probationary jail time. The trial court has authority to require service of up to one year in a county jail, workhouse, workfarm or other local correctional facility, as a condition of probation. Minn.Stat. § 609.135, subd. 4 (1988). Appellant correctly cites Minn.Stat. § 609.105, subd. 1 (1988) to require that a trial court imposing "a sentence to imprisonment for more than one year shall commit the defendant to the custody of the Commissioner of Corrections." However, we cannot read the term "imprisonment" so expansively as to encompass probationary jail time served in a county facility. Here, the trial court sentenced each count of criminal vehicular operation separately, stayed each sentence and imposed separate conditions of probation. The total probationary jail term does not exceed "the maximum amount of time the defendant would be required to serve in prison if the sentence had been executed." *State v. Gilbertson*, 455 N.W.2d 59 (Minn. 1990). While we conclude that the trial court did not abuse its discretion, we encourage periodic reevaluation of appellant's probationary jail term in an effort to assure that he receives necessary chemical dependency treatment at an optimum time.

■■■■ Fourth, appellant argues that several of the conditions of probation are improper. A trial judge has broad discretion in setting terms and conditions of proba-

---

4. In view of the propriety of the trial court's consideration of appellant's prior alcohol-related offenses as a basis for departure, we do not address the validity of using appellant's lack of insurance as a basis for departure. We decline to adopt the trial court's third and fourth reasons for departure (ignoring a warning not to drive and the manifest lack of necessity for the trip).

5. A gross misdemeanor carries a maximum penalty of one year in jail. Minn.Stat. § 514.02, subd. 1 (1988).

6. *State v. Moore*, 340 N.W.2d 671, 673 (Minn. 1983) and *State v. Wilwert*, 317 N.W.2d 346, 347 (Minn.1982), relied upon by appellant, are distinguishable. *Moore* is limited by that trial court's decision to sentence using the *Hernandez* method, a factor not present here. *Wilwert* deals with consecutive jail time, not consecutive probationary periods.

tion. Minn.Stat. § 609.135, subds. 1 and 4; *State v. Sutherlin*, 341 N.W.2d 303, 305 (Minn.App.1983). "Generally, conditions of probation must be reasonably related to the purposes of sentencing and must not be unduly restrictive of the probationer's liberty or autonomy." *State v. Friberg*, 435 N.W.2d 509, 515 (Minn.1989). The court may set conditions that impose "restrictions upon employment or business activities, places the probationer may frequent and even people with whom the probationer may associate." *Id.* at 516 (citing ABA Standards for Criminal Justice 18–2.3(f) (1980)). Minnesota appellate courts carefully review conditions which restrict fundamental rights. *Id.* (citing *United States v. Consuelo–Gonzalez*, 521 F.2d 259, 265 (9th Cir.1975)).

■ Appellant specifically challenges four conditions imposed by the court: (1) a psychological evaluation; (2) no possession or use of a motor vehicle; (3) random chemical testing; and (4) the requirement that appellant read and understand the materials submitted by the victims' families and write an appropriate letter of apology.

The restriction on owning or operating a motor vehicle and random chemical testing are reasonable under the facts of this case. Appellant's decision to drink and drive resulted in the death of two persons. The restrictions imposed by these two probationary requirements help assure that appellant will not drive while under the influence of alcohol. We similarly find the psychological examination to be within the court's discretion, because it will assist appellant in identifying the reasons for his repeated involvement in drinking and driving episodes, and for his excessive reliance on alcohol. Although we sanction the court's requirement that appellant read the victim impact materials and write a letter of apology, we cannot adopt the subjective

conditions that appellant *understand* what he has read and write an *appropriate* letter of apology. The trial court's conditions of probation are modified to this limited extent.

## IV.

Is appellant entitled to refuse probation and demand execution of his sentence?

■ Appellant argues that the trial court erred by refusing to execute his stayed sentence. We disagree. In *State v. Randolph*, 316 N.W.2d 508 (Minn.1982), the Minnesota Supreme Court held:

> [I]f the conditions of probation make probation more onerous than prison and if it cannot be demonstrated that society's interests suffer by vacating the probation sentence, the defendant should be allowed to refuse probation and demand execution of sentence.

*Id.* at 510.[7] In a series of cases since *Randolph*, the Minnesota Supreme Court and this court have ruled that a defendant's request for executed sentence should be granted. *See State v. Milbrad*, 355 N.W.2d 706, 706 (Minn.1984); *State v. Murto*, 316 N.W.2d 739, 740 (Minn.1982); *State v. McElderry*, 422 N.W.2d 23, 25 (Minn.App.1988); *State v. Sheppheard*, 407 N.W.2d 477, 478 (Minn.App.1987); *Sutherlin*, 341 N.W.2d at 305–06. In each of these cases, the court found that the probationary sentence was more onerous than the executed prison sentence. Indeed, in all but one of the cases, the actual time to be served as a condition of probation was equal to or exceeded the amount of time that the defendant would actually have spent in prison if the sentence had been executed (after considering good time credit). *See* Minn.Stat. § 244.04, subd. 1 (1988) (one day credit allowed for each two days served in custody of Commissioner of Corrections). In this case, appellant would serve 20 months[8] in jail as a condition of

7. We believe that the dissent's citation of Minn.Stat. § 609.135, subd. 7 in support of its *Randolph* argument is misplaced in this case. We understand that the legislature enacted the statute in recognition of the time and expense necessary to process and integrate an inmate into the state prison system, not in response to *Randolph*.

8. At the time of sentencing, the court ruled that appellant would be entitled to good time credit for time served in the county facility. *See* Minn.Stat. § 643.29, subd. 1 (1988) (good time credit of five days per month allowed).

probation. He would serve 24 months of a 36 month executed sentence. *Id.* Thus, the probation term is not more onerous than the executed sentence.

Without citing authority, appellant urges us to expand the onerous test to include the other conditions of probation such as absence in the county jail of rehabilitation facilities and training offered by state-run institutions, and the necessity to endure the conditions of probation for a lengthy period of time. However, we need not address the validity of these concerns. Instead, we believe the trial court's decision not to execute appellant's sentence may be affirmed on the grounds that "society's interests [would] suffer by vacating the probation sentence." [9] Appellant has a substantial history of drinking and driving and subsequent conviction of DWI. The most recent instance of drinking and driving resulted in the death of two persons. The evaluation and treatment of appellant's alcohol problem, as well as the ability to supervise him for an adequate period of time, would be lost if his sentence were executed. Such evaluation, treatment and supervision will not only assist appellant in resolving his problems with alcohol, they will safeguard the motoring public as well. We conclude that the court did not abuse its discretion in this case.

## DECISION

The court's evidentiary rulings were within its discretion, the record contains ample evidence to support the conviction, appellant's sentence and probation are warranted and appellant is not entitled to demand execution of his stayed sentence.

Affirmed as modified.

NIERENGARTEN, Acting Judge (concurring specially).

I concur with the decision but add some words with respect to the dissent.

The sentence imposed by the trial court has precipitated the dissent. On no other issue has there been disagreement among the members of the panel.

The statutory and case law controlling the sentence has been fully covered by the decision and will not be repeated here.

Running like a thread throughout the dissent, however, is the notion that it is somehow unfair not to allow appellant to choose his punishment or, at least, some of its terms.

What is overlooked is that with an impressive record of mixing drinking with driving, appellant has now been found guilty of feloniously causing the death of two totally innocent people. And, once again, the cause of the tragedy was his driving while drinking.

Consistent with the fairness argument of the dissent is the claim that appellant should have the right to demand a certain sentence. But *who* shall determine whether probation or an executed sentence shall be the more onerous? To that question there is a simple answer: almost anyone other than defendant.

It is interesting to note that in the cases cited in the dissent on this point the *court* made the decision. And in *State v. Sutherlin*, 341 N.W.2d 303, 306 (Minn.App.1983), the court observes that "[a] defendant has no right to insist on any limitation of probationary jail time. This determination is entirely discretionary with the trial court. Minn.Stat. Sec. 609.135, subds. 1 and 4."

Clearly, the appellant is not the one who should decide the onerous issue (and, consequently, the sentence for a crime he committed).

While I agree that our jail and prison system should do what it can to rehabilitate its inmates, I am not much concerned with the "scale of intrusiveness, or embarrassment, or economic cost" to appellant because of the sentence for the crime he committed. Nor do I believe it is this court's function to cure his alcoholism.

Society did not commit the crime; the appellant did. And it offends no sense of

---

9. We cannot agree with the dissent's characterization of the language as mere dictum. Rather, we interpret the *Randolph* test to include two independent prongs: onerousness of the probationary sentence and society's interest.

fairness or justice that he should pay the penalty society exacts here by virtue of its statutes and case law.

DAVIES, Judge (dissenting).

I respectfully dissent as to the term of probation requiring appellant to serve more than a year in a county jail and as to forced imposition of probation when appellant has requested execution of sentence.

I.

Since the adoption of the Criminal Code in 1963, Minnesota corrections policy has been to limit consecutive time spent in local jails to one year. The Department of Corrections, with its capacity to provide recreation, education, vocational training, chemical dependency treatment, and minimum security facilities has handled all longer incarcerations.

Minnesota Statutes, section 609.105 (1988), states:

Subdivision 1. A sentence to imprisonment for more than one year shall commit the defendant to the custody of the commissioner of corrections.

Subd. 2. The commissioner of corrections shall determine the place of confinement in a prison, reformatory, or other facility of the department of corrections established by law for the confinement of convicted persons and prescribe reasonable conditions and rules for their employment, conduct, instruction, and discipline within or without the facility.

Subd. 3. A sentence to imprisonment for a period of one year or any lesser period shall be to a workhouse, work farm, county jail, or other place authorized by law.

These provisions could hardly be more explicit in drawing the line on jail time at one year. Yet here, by making probationary jail time consecutive, the trial court has sentenced the appellant to spend 20 months in the Chisago County jail, without benefit of Department of Corrections programs.

Not surprisingly, appellant asks relief from his "probation." He asks that he be turned over to the Department of Corrections to serve a 24–month sentence, as would be required if his sentence is executed and he earns the standard good time credit.

I believe appellant should be turned over to the Department of Corrections pursuant to Minn.Stat. § 609.105, even if he remains under probation.

II.

Appellant also argues that he has a right to reject probation altogether, by choosing execution of his sentence.

Appellant's claim, first of all, has legislative support in Minnesota Statutes, section 609.135, subd. 7, adopted in 1989.[1] That section denies to defendants a right to elect execution of sentence in limited circumstances (when the offender will serve less than nine months in a state institution). The implication is that in other circumstances the defendant has a right to reject probation.

This legislative policy matches our traditional view of probation. Probation is an act of "grace and clemency." Black's Law Dictionary 1082 (5th ed. 1979). Forced probation contradicts this fundamental idea. Probation is perverted when used over the offender's protest and as a device to extend authority over the offender's life for years beyond the period of permitted incarceration. I think appellant correctly identifies his probation as a more onerous penalty, rather than as an act of "grace and clemency."

Since *State v. Randolph*, 316 N.W.2d 508 (Minn.1982), the Minnesota Supreme Court and this court have consistently allowed offenders to demand execution of their sentences. *Randolph* and all subsequent supreme court and appellate court cases on

---

1. Subd. 7. [DEMAND OF EXECUTION OF SENTENCE.] An offender may not demand execution of sentence in lieu of a stay of imposition or execution of sentence if the offender will serve less than nine months at the state institu-

tion. This subdivision does not apply to an offender who will be serving the sentence consecutively or concurrently with a previously imposed executed felony sentence.

requests for execution of sentence have concluded by holding that, if the defendant insists upon execution of the sentence, the request should be granted.[2]

The right of execution is not an abstract right, but one predicated upon the idea that a probationary sentence ought not be "more onerous" than any nonprobation sentence. As *Randolph* pointed out, "the presumptive sentence is the most onerous sentence that should be imposed *absent aggravating factors constituting grounds for departure.*" 316 N.W.2d at 510 (emphasis added). The supreme court stated further that:

> If the presumptive sentence is probation but the trial court attaches conditions of probation that make the probationary sentence more onerous in reality than a prison sentence, then the trial court, in effect, has not followed the Sentencing Guidelines.

*Id.*

The majority here holds that the probationary sentence is "not more onerous than the executed sentence." That is not how it is perceived by the appellant. Who is in a better position than the offender to decide whether probation is "more onerous" than the executed sentence?

In making its own determination of onerousness, the majority here makes a first ad hoc evaluation, and starts down the road to a system of judicial review of probationary sentences. Many more cases will follow if this is the road taken. I am unwilling to have this new burden imposed on this court and on the Minnesota Supreme Court. Therefore, I would continue to allow the defendant to reject a "probationary" sentence. I would reaffirm a defendant's right to demand execution of sentence in all cases where the defendant perceives the conditions of probation to be more onerous than execution of sentence.

Furthermore, I believe the majority misjudges onerousness, if judging onerousness

is what the appellate courts are now to do. The test ought not be relative length of incarceration alone, although that is the test applied by the majority. If the supreme court had intended length of jail time to be the exclusive test, it should and would have used the word "longer." It must have had in mind a more complex idea because it used a more complex term: "onerous." Here the appellant wants to trade seven years of highly restrictive probation for four months of additional incarceration. That is a rational choice, measured on a scale of intrusiveness, or embarrassment, or economic cost.

*Randolph*, 316 N.W.2d at 510, in dictum, said forced probation might be justified "when the public interest is served." The majority here relies on that dictum, which has never before been followed, as a basis for forced probation.

We have here a case of creative sentencing. Creativity to serve "the public interest" is admirable, but "probation" sentences, if unconstrained, could destroy the system of proportionality we seek through guidelines and judicial review of sentencing. Creativity, therefore, must be on the side of "grace and clemency" to be permissible. Otherwise, probation is turned into a device for ratcheting up the penalty.

Furthermore, I believe the majority misjudges what terms of probation serve "the public interest." Nothing in the record suggests that ten years of restrictive probation will help the appellant defeat his alcoholism. Experience teaches that the end to an individual's drunk driving comes when recovery from alcoholism begins. To deprive appellant for a decade of an essential economic tool, the power to own and drive a car, seems ill designed to help him remake his life free of alcohol. I would reject this probationary sentence as not in "the public interest."

Rasinski has not yet served the jail time imposed as a condition of probation and, if

---

2. *See State v. Milbrad*, 355 N.W.2d 706, 706 (Minn.1984); *State v. Wilwert*, 317 N.W.2d 346, 347 (Minn.1982); *State v. Murto*, 316 N.W.2d 739, 740 (Minn.1982); *State v. Smith*, 316 N.W.2d 562, 562 (Minn.1982); *State v. Ran-* *dolph*, 316 N.W.2d 508, 510–11 (Minn.1982); *State v. McElderry*, 422 N.W.2d 23, 25 (Minn. App.1988); *State v. Sheppheard*, 407 N.W.2d 477, 478 (Minn.App.1987); *State v. Sutherlin*, 341 N.W.2d 303, 306 (Minn.App.1983).

he had done so, there would still be some four months of additional time which could be served if probation were revoked. He should be able to substitute those four months in the custody of the Department of Corrections for seven additional years of probation. His request for execution of his sentence should be honored.