**Ryan William PAGEAU, petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. A12–0158.**

Court of Appeals of Minnesota.

Sept. 10, 2012.

David Sjoberg, Sjoberg & Associates, P.A., Ham Lake, MN, for appellant.

Lori Swanson, Attorney General, St. Paul, MN; and Janet Reiter, Chisago County Attorney, Nicholas A. Hydukovich, Assistant County Attorney, Center City, MN, for respondent.

Considered and decided by WRIGHT, Presiding Judge; SCHELLHAS, Judge; and LARKIN, Judge.

## OPINION

LARKIN, Judge.

Appellant challenges the district court's denial of his postconviction request for discharge from probation, arguing that the district court impermissibly extended the length of his probationary period by converting the probationary periods associated with his stayed sentences into "stacked" terms, shortly before he otherwise would have been discharged from probation. Because the district court's pronouncement of a stayed consecutive sentence did not result in stacked probationary periods, and because the state agrees that there was no lawful basis to extend appellant's probationary period, we reverse the district court's denial of postconviction relief and remand for an order discharging appellant from probation.

## FACTS

In this case of first impression, we must determine whether "stacked" probationary periods automatically result when a district court pronounces a stayed consecutive sentence. The issue arises in the context of a postconviction dispute regarding the length of appellant Ryan William Pageau's probationary period. Respondent State of Minnesota charged Pageau with multiple offenses in an eight-count criminal complaint. Pageau and the state reached a plea agreement, under which Pageau pleaded guilty to count two (false imprisonment), count four (criminal vehicle operation), and count six (fleeing a police officer).

The district court sentenced Pageau on January 30, 2008. The district court first pronounced sentence on count two:

> [I]t is the sentence ... of this [c]ourt that you shall be committed to the Commissioner of Corrections of this [s]tate for a period of 15 months. Provided, however, that execution of this prison term is hereby stayed and you will be placed on supervised probation to and under the Department of Corrections for a period of three years.

Next, the district court pronounced sentence on count four:

> [I]t is the sentence ... of this [c]ourt that you shall be committed to the Commissioner of Corrections of this [s]tate

for a period of [17] months, provided, however, that execution of this prison term is hereby stayed, you will be placed on supervised probation to and under the Department of Corrections for a period of three years.

. . . .

This sentence is consecutive to count [two.] [1]

Lastly, the district court pronounced sentence on count six:

[I]t is the sentence . . . of this [c]ourt that you shall be committed to the Commissioner of Corrections for a period of 15 months, provided, however, that execution of this prison term is hereby stayed, you will be placed on supervised probation to and under the Department of Corrections for a period of three years.

. . . .

This sentence is consecutive to count two but concurrent to [c]ount [f]our.

The district court's oral pronouncement is consistent with the written sentences that followed. The record contains three criminal judgments and warrants of commitment. They state that each of Pageau's sentences was stayed for a period of three years and that the second and third "sentences" were consecutive to the first. Although each of the criminal judgments and warrants of commitment states that Pageau was placed on probation to the department of corrections for three years, none indicates that the probationary periods were stacked.

On February 6, 2008, Pageau signed three probation agreements with the department of corrections, one for each of the sentences. Each of the agreements designated an expiration date of January 29, 2011, for the associated stayed sentence. Approximately three years later, the department of corrections sent the district court a letter dated January 5, 2011, in which the department sought clarification regarding the length of Pageau's probationary period. The letter states:

The above offender was sentenced on 01/30/08 [on three counts]. The above files are three (3) year probationary periods, which expire on 01/29/11. However, the [c]ounts were consecutive. It is this agent's understanding and the defendant's attorney's understanding that the prison time was consecutive, but not probation.

This agent is seeking clarification regarding what the [c]ourt ordered to be consecutive. Thank you for your assistance.

_____ Prison sentences consecutive and probation ends on 01/29/11.

_____ Probation consecutive and subject to remain on probation until 2014.

The letter also included a line for the sentencing judge's signature and date. The sentencing judge checked the line indicating that probation was consecutive and that Pageau would remain on probation until 2014, entered his signature on the signature line, and dated his signature January 19, 2011. The record indicates that the original letter containing the judge's signature was filed with the district court that same day.

---

1. Minn. Sent. Guidelines 2.F.2. (Supp.2011) authorizes permissive consecutive sentences under certain circumstances. Generally, when determining the applicable sentencing statute, the relevant date is the date of the offense. *State v. Master,* 312 Minn. 596, 597, 252 N.W.2d 859, 860 (1977). Although the sentencing guidelines have been modified since the date of offense in this case, August 30, 2006, the revisions do not change the substance of the relevant parts of the guidelines. We therefore cite to the current version of the guidelines throughout this opinion.

In September 2011, Pageau filed a petition for postconviction relief, asserting that the district court "effectively modified [his] sentence in violation of" the rules of criminal procedure and that the district court modified the terms of his probation in violation of law.[2] Pageau specifically requested that he be discharged from probation. The district court held a hearing on the petition and denied Pageau's request for discharge from probation, explaining that it viewed the request as "a motion to reduce" Pageau's probationary period. The district court stated, "this is not a matter of me extending his probation; I think you're asking me to shorten his probation because his probation was six years." The district court indicated that it intended to impose stacked probationary periods, stating that its "sentence was very clear, he was on probation for two consecutive three year terms, which means he's on [ ] probation for a period of six years."

Pageau appeals the district court's denial of his request for postconviction relief.

## ISSUES

I. Was appellant's petition for postconviction relief timely under Minn.Stat. § 590.01 (2010)?

II. Does a district court's pronouncement of a stayed sentence consecutively to another stayed sentence automatically result in stacked probationary periods?

## ANALYSIS

■ When reviewing a postconviction court's decision to grant or deny relief, issues of law are reviewed de novo. *Leake v. State*, 737 N.W.2d 531, 535 (Minn.2007). The question before this court is whether a district court's pronouncement of a stayed

sentence consecutively to another stayed sentence automatically results in stacked probationary periods, in addition to consecutive periods of incarceration. The question is one of law, and our review is therefore de novo. *See id.*

### I.

■ We first address the state's argument that Pageau's postconviction petition was untimely. Even though the state challenged the timeliness of the petition in district court, the district court ruled on the merits, without addressing the state's timing argument.

Under the postconviction statute,

a person convicted of a crime, who claims that ... the sentence or other disposition made violated the person's rights under the Constitution or laws of the United States or of the state ... may commence a proceeding to secure relief by filing a petition in the district court ... to ... correct the sentence or make other disposition as may be appropriate.

Minn.Stat. § 590.01, subd. 1. A petition for postconviction relief generally must be filed within two years of "the entry of judgment of conviction or sentence." *Id.*, subd. 4(a)(1). A recent decision of the Minnesota Supreme Court suggests that the two-year limitation is not jurisdictional. *See Carlton v. State*, 816 N.W.2d 590, 606 (Minn.2012) (concluding that the time limitation in section 590.01, subdivision 4(c) does not operate as a jurisdictional bar).

On appeal, Pageau contends that because "the district court merely pronounced that [his] sentences are consecutive and never made any specific

---

**2.** Pageau also asserted that the district court violated the sentencing guidelines by failing to use a criminal history score of zero when imposing permissive consecutive sentences on counts four and six. *See* Minn. Sent. Guidelines 2.F.2. The state agreed with this assertion, and the district court corrected the sentences in accordance with the guidelines.

declarations that the probationary periods were to be stacked or consecutive," his probationary periods ran simultaneously and expired in 2011.[3] Essentially, Pageau contends that the district court impermissibly modified a condition of his stayed sentence by extending his probation in January 2011. The state disagrees and insists that the district court did not modify Pageau's sentence in January 2011. But the state acknowledges that if the district court did, in fact, modify the sentence, Pageau had two years from the date of modification to file a postconviction petition for relief. We agree with the state's analysis. *See* Minn.Stat. § 590.01, subds. 1, 4(a)(1). And because resolution of Pageau's appellate claim in his favor would establish the timeliness of his postconviction petition, we address the merits of his claim.

## II.

■ Our determination of whether "stacked" probationary periods automatically result when a district court pronounces a stayed consecutive sentence involves several considerations. First, we consider whether existing legal authorities directly address and answer the question. Second, we consider whether the term "sentence" is clearly defined as including any conditional probationary period imposed in connection with a stay, so that a consecutive-sentence designation results in stacked probationary periods, in addition to consecutive periods of incarceration. Third, we consider whether the district court's intent to impose stacked probationary periods should be determinative in this case. And fourth, we consider the prac-

tical concerns associated with a conclusion that stacked probationary periods automatically result when a district court pronounces stayed consecutive sentences.

### Legal Authority

The Minnesota statutes do not explicitly authorize stacked probationary periods. The most relevant statute is Minn.Stat. § 609.15 (2010)[4], which authorizes consecutive sentences. Although that section has been interpreted as applying to stays of execution, the statute does not address whether the associated probationary periods are stacked when a district court pronounces stayed consecutive sentences. *See* Minn.Stat. § 609.15; *see also Moffitt v. State*, 304 N.W.2d 31, 32 (Minn.1981) (holding that "the [district] court did not violate section 609.15, subdivision 1, in ordering that the sentence be served consecutively to petitioner's previously imposed but unexecuted prison sentence"). And the Minnesota Sentencing Guidelines make only one reference to stayed consecutive sentences. In discussing permissive consecutive sentences, the guidelines state that "[t]he consecutive stayed sentence begins when the offender completes the term of imprisonment and is placed on supervised release." Minn. Sent. Guidelines 2.F.2. Because Pageau did not complete a term of imprisonment on the first sentence imposed, the permissive-consecutive-sentencing provision in the guidelines does not address the circumstances here. It therefore is not instructive.

Minnesota caselaw is similarly uninstructive. This court has "sanctioned the stacking of consecutive probationary periods." *State v. Rasinski*, 464 N.W.2d 517,

---

**3.** Pageau's petition for postconviction relief was based on the same contention.

**4.** Although the offense in this case was committed in 2006, the statutes cited in our analysis have not changed substantively since that time. We therefore cite to the current versions of the statutes.

524 (Minn.App.1990) (*Rasinski I*), rev'd on other grounds, 472 N.W.2d 645 (Minn. 1991) (*Rasinski II*); State v. Aleshire, 451 N.W.2d 66 (Minn.App.1990). But the appellate courts of this state have not addressed whether a district court's pronouncement of stayed consecutive sentences automatically results in stacked probationary periods.[5] In sum, we are not aware of any legal authority that directly answers the question presented in this appeal.

*Definition of Sentence*

Next, we consider whether the term "sentence" is clearly defined as including a probationary period imposed as a condition of a stayed sentence, so that a district court's designation of the sentence as consecutive applies to both the period of incarceration and the period of probation. The state argues in support of this approach, contending that "the word 'sentence' does not merely refer to jail or prison time served or stayed. Instead, 'sentence' refers to the commonly-understood definition that includes probation and the conditions thereof."

Although judicial vernacular includes the term "probationary sentence," *see, e.g., Rasinski II*, 472 N.W.2d at 650 (explaining that a defendant "has a right to demand execution of the presumptive sentence when the probationary sentence is more onerous"), Minnesota caselaw does not expressly define the term "sentence." And the Minnesota statutes present conflicting usages of the term. For example, Minn. Stat. § 609.10, which is titled "Sentences Available," does not list probation as a generally available sentence. *See* Minn. Stat. § 609.10, subd. 1 (2010) (listing imprisonment, payment of a fine, payment of court-ordered restitution, and payment of a local correctional fee). Moreover, Minn. Stat. § 609.135 describes probation as something that may or may not be imposed as a condition of a stayed sentence, suggesting that probation is not a part of the sentence. *See* Minn.Stat. § 609.135, subd. 1(a)(1) (2010) (stating that when a district court stays imposition or execution of sentence, the court may order intermediate sanctions "without placing the defendant on probation").

Nevertheless, Minn.Stat. § 169A.275, subd. 3 (2010), provides that when a person is convicted of a fourth driving-while-impaired offense within a ten-year period, "the court shall sentence" the person to one of three options, including "a program of intensive supervision." The statute presents a case-specific exception to the limited types of sentences that the legislature has otherwise authorized. *See* Minn. Stat. § 609.095(a) (2010) ("The legislature has the exclusive authority to define crimes and offenses and the range of the sentences or punishments for their violation. No other or different sentence or punishment shall be imposed for the com-

---

**5.** Our decisions in *Rasinski I* and *Aleshire* do not explain what the district court said or did to implement stacked probationary periods in those cases. *See Rasinski I*, 464 N.W.2d at 520 (indicating that the district court imposed two consecutive sentences, stayed the sentences, and "placed the defendant on probation for ten years (five years for each count sentenced)"); *Aleshire*, 451 N.W.2d at 67 (stating, "[t]he entire one year sentence for the second count was stayed for two years to run consecutively with the stayed sentence for the first count"). Moreover, the issue pre- sented in those cases was not how to impose stacked probationary periods. *See Rasinski I*, 464 N.W.2d at 524 (indicating that the appellant contested "the trial court's stacking of probationary periods" on appellant's felony sentences, without identifying the basis for appellant's challenge, and concluding that the practice was permissible under *Aleshire*); *Aleshire*, 451 N.W.2d at 67 (identifying the issue presented as follows: "Do consecutive stayed sentences for two gross misdemeanor convictions violate Minn.Stat. § 609.135, subd. 2(2) (1988)?").

mission of a crime than is authorized by this chapter or other applicable law.").

In sum, the term "sentence" is not clearly defined under statute. Other authorities are similarly conflicting. *Compare* Minn. Sent. Guidelines 3.A.1. (Supp.2011) (stating that when a judge grants a stayed sentence, "[t]he judge would then establish conditions which are deemed appropriate for the stayed sentence, including establishing a length of probation") *with* Minn. R.Crim. P. 27.03, subd. 7(3)(a)iii (requiring the district court to record a "sentence using an order generated from the court's case management system" and directing that the order must contain "the pronouncements" of the "precise terms of sentence including ... whether the defendant is placed on probation and if so, the terms and conditions of probation").[6] Because there is no clear definition of the term "sentence," we are not persuaded by the state's argument that a stayed sentence encompasses any attendant probationary period such that a district court's pronouncement of consecutive stayed sentences automatically results in stacked probationary periods.

*Judicial Intent*

Next, we consider the state's argument that, if Pageau's sentence is ambiguous, then this court should resolve the ambiguity by examining extrinsic evidence of the district court's intent. The state specifically argues that this court should consider extrinsic evidence in the form of (1) the district court's January 2011 response to the department of corrections' request for clarification and (2) the district court's December 2011 postconviction-hearing statements regarding its intent to impose two consecutive three-year probationary periods. Pageau contends that this approach is inconsistent with Minn. R.Crim. P. 27.03, subd. 4(A), which requires a sentencing judge to precisely state the terms of a sentence.

Because the law does not clearly indicate whether the district court's pronouncement of consecutive sentences automatically created stacked probationary periods, Pageau's sentence is subject to two reasonable interpretations—as shown by the department of corrections' request for clarification from the district court. We therefore conclude that Pageau's sentence is ambiguous. *See State v. Leathers*, 799 N.W.2d 606, 608 (Minn.2011) (stating that ambiguity exists when language is subject to more than one reasonable interpretation). Although we conclude that the sentence is ambiguous, we are not persuaded that it is appropriate to rely on judicial intent to resolve the ambiguity in this case.

We are not aware of any precedential authority that approves consideration of previously uncommunicated judicial intent when construing an ambiguous oral sentence.[7] Although this court stated, in *State v. Staloch*, that "[w]hen an orally pronounced sentence is ambiguous ... the judgment and commitment order is evi-

---

6. Like the sentencing guidelines, the Minnesota Rules of Criminal Procedure have been modified since the date of offense in this case. But the revisions did not change the substance of the relevant parts of the rules. We therefore cite to the current versions of the rules throughout this opinion.

7. The state relies solely on an unpublished decision of this court, which is not precedential. Minn.Stat. § 480A.08, subd. 3(c)

(2010). We nonetheless observe that none of this court's unpublished decisions has approved consideration of previously uncommunicated judicial intent when construing an ambiguous oral sentence. Instead, the unpublished decisions generally involve consideration of extrinsic evidence in the form of a written sentencing order or sentencing-hearing transcript.

dence which may be used to determine the intended sentence," *Staloch* involved "a serious and direct conflict between the oral sentence and the written sentence." 643 N.W.2d 329, 329, 330 n. 1, 331 (Minn.App. 2002) (holding that "[w]hen an orally pronounced sentence varies from a written sentencing order, the orally pronounced sentence controls") (quotation omitted). In this case, there is no conflict between the oral and written sentences.

More importantly, in *Staloch*, this court did not address or determine whether previously uncommunicated judicial intent is a proper consideration when construing an ambiguous oral sentence; this court simply stated that a district court's "written sentencing order" is evidence that may be used to determine the intended sentence. *Id.* at 331. In fact, this court expressed hesitancy regarding an intent-based approach to ambiguous sentences. In adopting the rule that consideration of a written sentencing order is appropriate when examining judicial intent, we applied the reasoning of *United States v. Villano*, 816 F.2d 1448, 1450–52 (10th Cir.1987), observing that it was "sound and consistent with Minnesota sentencing practice." *Id.* We quoted *Villano* as follows:

> It has been suggested that whenever there is a conflict between the oral sentence and the sentence as described in the written judgment, the court must attempt to discern the sentencing judge's intentions. Apart from problems associated with ascertaining intent from the appellate record, such a change would affect important principles that underlie the traditional rule. *The legal status of the oral sentence and the right to be present at sentencing would be diluted by an intent-based approach.*
>
> . . . .

> . . . Sentencing should be conducted with the judge and defendant facing one another and not in secret.

*Id.* (emphasis added) (quoting *Villano*, 816 F.2d at 1450–52).

As indicated in *Staloch*, consideration of judicial intent is inconsistent with traditional sentencing principles. For example, Minn. R.Crim. P. 27.03 requires that "[w]hen pronouncing sentence the court must: . . . . [s]tate precisely the terms of the sentence." Minn. R.Crim. P. 27.03, subd. 4(A). Rule 27.03 also provides that "[i]f the court stays imposition or execution of sentence: . . . [t]he court must state the length of the stay." *Id.*, subd. 4(E)(1).

Moreover, this court recently explained that "the length of a stay of execution or probation is an important element of a sentencing decision that must be stated with precision, suggesting that absent other circumstances, the length of a stay cannot be altered lightly." *State v. Barrientos*, 816 N.W.2d 675, 678 (Minn.App.2012). And in discussing the need to precisely state the terms and conditions of a stayed sentence, the Minnesota Supreme Court has stated, "It is an essential component of due process that individuals be given fair warning of those acts which may lead to a loss of liberty. This is no less true whether the loss of liberty arises from a criminal conviction or the revocation of probation." *State v. Ornelas*, 675 N.W.2d 74, 80 (Minn. 2004) (quotation omitted).

Under rule 27 and the policies it embodies, a defendant is entitled to be informed of the length of his or her probationary period at the time of sentencing. Although we can imagine circumstances in which a district court could clarify the length of a stay based on previously unstated judicial intent without compromis-

ing the principles that underlie rule 27.03,[8] this is not such a case. Three years is simply too long to wait for a precise statement regarding the length of a probationary period when the probationer and supervising authority reasonably construed the district court's sentence as imposing a three-year probationary period.[9] We therefore do not consider the district court's January 2011 response to the department of corrections' inquiry or its December 2011 postconviction-hearing statements of judicial intent. We limit our interpretation of Pageau's sentence to the district court's pronouncement at the sentencing hearing, namely, that the sentences on counts four and six are consecutive to the sentence on count two.

*Practical Concerns*

Lastly, we consider the possible ramifications of holding that a district court's pronouncement of stayed consecutive sentences automatically results in stacked probationary periods. We observe that the traditionally recognized goal of consecutive sentencing is to impose a longer single period of incarceration. For example, the Minnesota Sentencing Guidelines describe a consecutive sentence by reference to periods of incarceration, stating that "[c]onsecutive sentences are a more severe sanction because the intent of using them is to confine the offender for a longer period than under concurrent sentences." Minn. Sent. Guidelines cmt. 2.F.01. (Supp. 2011). The guidelines also state that "[t]he service of the consecutive sentence begins at the end of any incarceration arising from the first sentence. The institutional records officer will aggregate the separate durations into a single fixed sentence, as well as aggregate the terms of imprisonment and periods of supervised release." Minn. Sent. Guidelines cmt. 2.F.04. (Supp.2011); *see* Minn.Stat. § 244.101, subd. 1 (2010) (stating that "the executed sentence consists of two parts: (1) a specified minimum term of imprisonment that is equal to two-thirds of the executed sentence; and (2) a specified maximum supervised release term that is equal to one-third of the executed sentence"). Caselaw similarly describes a consecutive sentence as a longer, aggregated term of imprisonment. *See State v. Elting*, 480 N.W.2d 152, 154 (Minn.App. 1992) ("When consecutive sentences are imposed ... the sentence durations for each offense are aggregated into a single presumptive sentence."), *review denied* (Minn. Mar. 26, 1992).

We also observe that the precedent regarding stacked probationary periods, which is limited to *Rasinski* and *Aleshire,* leaves important questions unanswered. For example, if an offender is proved to have violated a probationary term during the first of two stacked probationary periods, can that violation be a basis to revoke *both* of the associated stayed sentences, even though the second probationary period has not commenced? And, if an offender receives stacked probationary periods and completes the first period successfully, is the stayed sentence associated with the first probationary period subject to revocation during the second probationary period? Although we need not decide those issues here, we observe that Minn.Stat. § 609.14 indicates that any conduct that serves as the basis for revocation of a stay

---

8. For example, Minn. R.Crim. P. 27.03, subd. 4(E)(5) states that if a "defendant disagrees with the probation agent concerning the terms and conditions of probation, the defendant may return to court for clarification."

9. We observe that the probation agreements provided by the department of corrections stated that each of Pageau's stayed sentences would expire on January 29, 2011—three years from the date of sentencing.

must occur during the term of the stay. *See* Minn.Stat. § 609.14, subd. 1(b) (2010) (stating that probation-revocation proceedings may be initiated based on an alleged probation violation that occurred "during the term of the stay").

Minn.Stat. § 609.14 therefore suggests that if a probation violation occurs after the expiration of the first of two stacked probationary periods, then the violation could not be a basis for revocation of the sentence associated with the first probationary period; it could only be a basis for revocation of the sentence associated with the second probationary period. For example, at oral argument, the state agreed that if Pageau's probationary periods were, in fact, stacked, then Pageau has successfully completed the probationary period associated with the sentence on count two and is now on probation only in connection with the sentences on counts four and six. The state further agreed that if Pageau's probation were to be revoked, the district court could only execute the sentences on counts four and six. In other words, Pageau's periods of imprisonment on counts four and six would not be aggregated with the period of imprisonment on count two— even though the sentences on counts four and six were "consecutive" to the sentence on count two.

If, as the state concedes, all stayed sentences associated with stacked probationary periods may not be revoked based on a single probation violation occurring during any of the probationary periods, the goal of consecutive sentencing—a longer single period of incarceration—is frustrated. We need not resolve this ancillary issue, but we will not ignore the fact that the use of stacked probationary sentences likely frustrates the traditionally recognized goal of consecutive sentencing. This concern weighs heavily against a conclusion that imposition of consecutive stayed sentences automatically results in stacked probationary periods.

*Conclusion*

■ In summary, because existing legal authorities do not establish that stacked probationary periods automatically result when a district court pronounces a stayed sentence consecutively to another stayed sentence, and because the use of stacked probationary periods likely yields a result that is inconsistent with the traditionally recognized goal of consecutive sentencing, we hold that a district court's pronouncement of a stayed sentence consecutively to another stayed sentence does not automatically result in stacked probationary periods. Moreover, because the rules of criminal procedure require precision when pronouncing sentence, we further hold that to impose stacked probationary periods when pronouncing a stayed sentence consecutively to another stayed sentence, a district court must specify that the probationary periods are to be stacked. In the absence of such a statement, the attendant probationary periods run simultaneously.

## DECISION

Because the district court did not specify that Pageau's probationary periods on counts four and six were to be stacked with or consecutive to the probationary period on count two, the probationary periods ran simultaneously. Thus, the district court pronounced a three-year probationary period. The district court therefore modified the conditions of Pageau's stayed sentences when it directed that he remain on probation for a total of six years. Because Pageau filed his petition for postconviction relief challenging the sentence modification within two years of the modification, the petition was timely. Finally, because the state agrees that there was no lawful basis to modify the conditions of

Pageau's stayed sentence, and to thereby double the length of Pageau's probation, we reverse the district court's denial of Pageau's request for postconviction relief and remand for an order discharging Pageau from probation.

**Reversed and remanded.**

SCHELLHAS, Judge (dissenting).

I respectfully dissent from the majority's conclusions that: (1) the district court's pronouncement of Pageau's sentence is ambiguous; and (2) a district court's pronouncement of consecutive stayed sentences does not automatically result in stacked probationary periods; to impose stacked probationary periods when pronouncing consecutive stayed sentences, a district court must specify that the probationary periods are to be stacked; and, in the absence of such a statement, the attendant probationary periods run simultaneously.

The majority concludes that Pageau's sentence is ambiguous in part because the law does not clearly indicate whether the district court's pronouncement of consecutive sentences automatically creates stacked probationary periods and the department of corrections requested clarification from the district court, showing that the sentence is subject to two reasonable interpretations. The majority's conclusion that the law does not clearly indicate whether the pronouncement of consecutive sentences automatically creates a stacked probationary period hinges on its conclusion that no clear definition of the term "sentence" exists and its rejection of the state's argument that "a stayed sentence encompasses any attendant probationary period such that a district court's pronouncement of consecutive stayed sentences automatically results in stacked probationary periods." I am persuaded by the state's argument, which is consistent with the district court's understanding in this case, as stated at the postconviction-relief hearing.

I agree with the majority that "[u]nder rule 27, and the policies it embodies, a defendant is entitled to be informed of the length of his or her probationary period at the time of sentencing." Rule 27.03, subdivision 4, provides that "[w]hen pronouncing *sentence,*" "[i]f the court stays imposition or execution of sentence," "the court must" make various statements to a defendant, including among other things that "[t]he court must state the length of the stay" and that "if the defendant disagrees with the probation agent concerning the terms and conditions of probation, the defendant may return to court for clarification." Minn. R.Crim. P. 27.03, subd. 4(E) (emphasis added).[10] In this case, the district court complied with this rule. Nothing in the rule requires a district court to specify that the probationary periods of consecutive sentences run consecutively. Regarding a court's *sentencing* order, rule 27.03, subdivision 7, requires "at a minimum" that the order contain specifically enumerated items, including "whether the defendant is placed on probation and if so, the terms and conditions of probation." *Id.,* subd. 7(3)(a)(iii). Any probationary period must be contained within the court's *sentencing* order. But nothing in the rule requires that a court specify that probationary periods of consecutive sentences are also consecutive.

Based on rule 27 and the supreme court's use of the term, "probationary sentence," *see State v. Rasinski,* 472 N.W.2d

---

**10.** Like the majority, as noted in footnote 6 of its opinion, I cite to the current version of the rules.

645, 650–51 (Minn.1991); *State v. Randolph,* 316 N.W.2d 508, 510 (Minn.1982), I would affirm the district court's conclusion in this case that its consecutive sentences were not ambiguous and that they included consecutive probationary periods. *See also* [1982–2011] Minn. Judges Crim. Benchbook 18–12–18–16 (Minn. State Ct. Adm'r Office, 2011) (including in section on sentencing options a district court's imposition of conditions of probation).

Here, the district court treated Pageau's postconviction-relief petition as a request for clarification about his probation. Indeed, probationers may return to the district court for clarification about the terms of their probationary sentences. *See State v. Austin,* 295 N.W.2d 246, 251 (Minn. 1980) (stating that, at sentencing, district courts should advise probationers that they can return to the court for clarification if necessary (citing A.B.A. Standards for Criminal Justice, Probation § 3.1(a) Commentary (Approved Draft 1970))). The district court said:

> [T]here's an issue of clarification we have to get to. The motion to reduce, and that's how I view this, this is not a matter of me extending [Pageau's] probation; I think you're asking me to shorten his probation because his probation was six years.

And the district court continued on the record, providing the parties with a thorough explanation about its reasoning. I agree with the district court that neither its oral nor its written consecutive sentences are ambiguous. The sentencing included the probationary periods and are consecutive, or stacked.

Because I conclude that the district court did not modify Pageau's sentence, I also would conclude that Pageau's postconviction-relief petition was untimely, his

sentence having occurred on January 30, 2008.

I would affirm.