STATE of Minnesota, Respondent,

v.

John VAN GORDEN, Appellant.

No. 82–340.

Supreme Court of Minnesota.

Nov. 24, 1982.

C. Paul Jones, Public Defender, and Lawrence Hammerling, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Vernon E. Bergstrom, Chief, Appellate Division, Thomas A. Weist, Rick Osborne, Beverly J. Wolfe and William Neiman, Asst. County Attys., Minneapolis, for respondent.

AMDAHL, Chief Justice.

This is an appeal from judgment of conviction which raises only one issue, whether the trial court erred in imposing a sentence of 180 months when the presumptive sentence established by the Minnesota Sentencing Guidelines is 54 (50–58) months in prison. We affirm.

At 10:35 p.m. on September 18, 1981, the victim in this case, a 66-year-old widow living in northeast Minneapolis, heard a knock on her front door. When she looked out, she saw defendant, whom she did not know. She motioned him to go away. Instead, defendant went to her rear door and started to kick in the door. She called police and managed to give her address before defendant grabbed the phone from her and terminated the call.

Defendant then dragged her outside, hitting her as he did, to the base of a power-line tower in a wooded area behind her house. After tearing off her clothing, he forced her to commit fellatio, then took out her false teeth and threw them away, then made her resume the act of fellatio. He then penetrated her anus with his penis. He followed this by penetrating her vagina with his penis.

Meanwhile, police had arrived at her house and found the back door broken in. They called for a canine unit and the dog trailed the victim's scent to the scene of the sexual assault. The officer following the dog saw defendant in the act of vaginal intercourse. Upon seeing the police and the dog, defendant got up and fled but was caught by police a short time later.

The beating resulted in a piece of the victim's retinal tissue becoming detached

and floating inside the eyeball. There apparently is nothing that can be done about this condition, and it appears that the victim's vision has been permanently impaired as a result.

Defendant, who was 24 at the time of the offense, was subsequently charged with two counts of criminal sexual conduct in the first degree (one alleging that he put the victim in fear of great bodily harm, the other alleging that he inflicted personal injury), burglary and kidnapping, Minn.Stat. §§ 609.342(e)(i), 609.58, subd. 2(1)(b), 609.25, subd. 1(2), 609.25, subd. 2(2) (1980). Defendant pleaded guilty to the second of the two sex charges, burglary and kidnapping.

The kidnapping and sex offenses were both part of the same behavioral incident and therefore, pursuant to Minn.Stat. § 609.035 (1980), the trial court could sentence defendant for only one of the two. The one picked was the sex conviction because, although it is an offense with a shorter maximum prison term than the kidnapping offense, it is classified as a more serious offense by the Sentencing Guidelines. The burglary was also part of the same behavioral incident, but Minn.Stat. § 609.585 (1980) operates to except burglary from the operation of Minn.Stat. § 609.-035 (1980). Therefore, the trial court could sentence defendant for the sex offense and the burglary.

Criminal sexual conduct in the first degree is a severity level VIII offense, and, effective August 1, 1981, burglary is a severity level VII offense. At the time of sentencing, defendant had a criminal history score of one, based on a 1977 conviction of criminal sexual conduct in the third degree.[1] The presumptive sentence for the sex offense by a person with a criminal history score of one is 54 (50–58) months in prison. The presumptive sentence for the burglary offense by a person with a criminal history score of one is 32 (30–34) months in prison. If the court had chosen to impose a consecutive sentence for the burglary, a sentence which would have constituted a departure under Minnesota Sentencing Guidelines and Commentary, II.F. (1982), the presumptive sentence duration for the burglary would have been 24 (23–25) months. This is because when consecutive sentences are given the presumptive duration is determined by assigning a criminal history score of zero to the offenses being sentenced consecutively.

Defendant claimed no memory of the incident. His wife spoke on his behalf at the sentencing hearing, blaming his troubles on his drinking problem. She stated that "John is a Doctor Jekyll and Mr. Hyde when he is drinking."

Noting the extraordinarily brutal nature of the sexual assault of the victim, the trial court imposed concurrent prison terms of 180 months for the sexual assault and 24 months for the burglary. This 180-month term is slightly more than three times the maximum 58-month term that the court could have imposed without departing. The trial court cited, as reasons for the greater than double durational departure, the particular vulnerability of the victim and the particularly aggravated nature of the misconduct, including the fact that defendant inflicted permanent injury on the victim.

We agree with the trial court that the victim was particularly vulnerable due to her age. This is one of the aggravating factors that appears in the nonexclusive list of factors established by the Sentencing Guidelines Commission. Minnesota Sentencing Guidelines and Commentary, II.D. 2.b.(1) (1982). Defendant also acted with particular cruelty, which is another listed aggravating factor. Id., II.D.2.b.(2). Other aspects of defendant's conduct in the commission of these offenses can be cited as further aggravating factors:

(a) Although infliction of injury is an element of the offense of which he was convicted, the injury inflicted nonetheless can be considered as an aggravating factor in this case because of its serious and permanent nature. State v. Partlow, 321 N.W.2d 886 (Minn.1982).

---

1. Defendant was discharged from parole a month before the instant offense. If he had still been on parole he would have had a criminal history score of II.

(b) Defendant forced the victim to submit to three different forms of sexual penetration. *State v. Herberg,* 324 N.W.2d 346 (Minn.1982); *State v. Heinkel,* 322 N.W.2d 322 (Minn.1982).

(c) Defendant did not just invade the victim sexually but also invaded the zone of privacy surrounding and including her home. *State v. Morales,* 324 N.W.2d 374 (Minn.1982). As a result, the victim has to contend psychologically not only with the fact that she was sexually assaulted in a brutal way but also with the fact that her home is no longer the island of security that she perhaps thought it was.

(d) Within the context of the crime, there does not seem to have been any justification for dragging the victim outside, an act which only heightened the victim's fear.[2]

Having determined that aggravating factors were present, we must decide whether the factors or circumstances were sufficiently aggravating to justify a durational departure of a little over three times the presumptive sentence. Cases bearing on this include *State v. Herberg,* 324 N.W.2d 346 (Minn.1982); *State v. Partlow,* 321 N.W.2d 886 (Minn.1982); *State v. Martinez,* 319 N.W.2d 699 (Minn.1982); *State v. Stumm,* 312 N.W.2d 248 (Minn.1981); and *State v. Evans,* 311 N.W.2d 481 (Minn.1981).

It is sufficient to say in this case that a qualitative analysis of defendant's conduct leads us without hesitation to the conclusion that this is one of the extremely rare cases in which a greater than double durational departure was justified. Although we base this conclusion on the totality of the circumstances, we attach particular significance to the fact that permanent injury was inflicted.

Affirmed.

---

**2.** The presentence investigation report does not reveal the facts underlying defendant's conviction for criminal sexual conduct in the third degree in 1977. If that conviction was one in which the victim was injured, then we would have an additional aggravating factor to consider. *See* Minnesota Sentencing Guidelines and Commentary, II.D.2.b.(3) (1982).