**STATE of Minnesota, Respondent,**

v.

**Richard James VanWERT, Appellant.**

**No. C3–88–883.**

Court of Appeals of Minnesota.

April 11, 1989.

Review Granted June 9, 1989.

Benjamin F. Gallagher, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey County Atty., and Darrell C. Hill, Asst. County Atty., St. Paul, for respondent.

Heard, considered and decided by WOZNIAK, C.J., and LANSING and IRVINE, JJ.

*Acting as judge of the Court of Appeals by ap-

## OPINION

L.J. IRVINE, Judge *.

Richard James VanWert was convicted by a jury of two counts of criminal vehicular operation resulting in injury. On appeal from the judgment of conviction and denial of his motion for acquittal or a new trial, VanWert argues that the trial court erred in its additional instruction to the jury on the issue of whether the state was required to prove negligence separate from driving while under the influence of alcohol or driving with a blood alcohol of .10 more. He also contends that the trial court erred by dispositionally and durationally departing from the sentencing guidelines and in allowing the victim to be present in the courtroom. We affirm.

## FACTS

On June 29, 1987, Ryan O'Brien, then three and a half years old, and his family were visiting a former neighbor, Gene Williams, at Williams' home at 912 Edgerton Street in St. Paul. The O'Briens arrived at approximately 9:30 p.m. and parked across the street from Williams' home. Ryan accompanied his father, Daniel, into the house while his mother, Ann, remained in the truck with Ryan's sister.

Two other former neighbors, Anita Pennington and Billie Joe Shea, stopped at the O'Briens' truck to talk to Ann. Both Pennington and Ann testified later that they saw a car, northbound on Edgerton, approaching very quickly from a bridge about three blocks away. Another witness, Timothy Naylon, also watched the car for approximately one and three-quarter blocks while he waited to pull on to Edgerton. At trial, Naylon, Pennington, and Ann all estimated the vehicle's speed at 38–45 miles per hour.

When the car was just past the front of the O'Briens' truck, Ann and Pennington heard a thump and then saw Ryan fly through the air. They testified that Ryan flew above the car and landed approximately two houses away. All of the witnesses

pointment pursuant to Minn. Const. art. VI, § 2.

testified that they did not hear the sound of the car's brakes until after the thump.

Williams and Daniel found Ryan lying in the southbound lane of Edgerton. His heart was beating, but he was not breathing. The police and an ambulance arrived, and Ryan was transported to the hospital.

Officer Gregory Mercado testified that he approached VanWert and immediately noticed a strong odor of alcohol. Mercado noted that VanWert was glassy eyed, swaying, and had slurred speech. Van-Wert admitted that he drank three beers after a softball game. Mercado also noticed that VanWert had difficulty walking to the squad car. In Mercado's opinion, VanWert was under the influence of alcohol.

The officers took VanWert to police headquarters. Two breathalyzer tests revealed a blood alcohol concentration of .19. He had a strong smell of alcohol, bloodshot eyes and slurred speech. Two hours later, VanWert failed the horizontal gaze nystagmus test. He fell during the one leg stand and could not touch the tip of his nose. He counted to 30 and recited the alphabet but had slurred speech. He did complete the nine step heel-to-toe walk. In all officers' opinions, VanWert was under the influence of alcohol at the time of the tests.

Other officers spoke to witnesses and processed the accident scene. Photos of the car showed damage to its left front end. Another officer measured the skid marks at the scene and compared them with test skid marks he made with Van-Wert's car at 30 miles per hour. The skid marks made at the scene indicated that VanWert may have been traveling in excess of the 30 mile per hour speed limit, although the parties disputed that fact at trial and on appeal.

Dr. Sockalosky testified about the nature and extent of Ryan's injuries. Once Ryan was at the hospital, doctors implanted permanent tubes to remove fluid and pressure from his brain and performed a tracheotomy and direct laryngoscopy. He was hospitalized for several months and still requires 24 hour care.

At present, Ryan has the mental abilities of a two to three month child and will probably never walk or talk again. He can smile and respond a bit with his eyes but has no muscle control beyond a limited ability to grasp with his right hand. He cannot swallow normally, drools, and is fed through a tube in his stomach. He is incontinent and lacks the capacity to move away from pain. At the time of Sockalosky's testimony, Ryan was wheeled into the courtroom over defense counsel's objections that Ryan's presence was more prejudicial than probative.

In his testimony, VanWert admitted he was driving the car that struck Ryan and that Ryan suffered great bodily harm but claimed the accident was unavoidable. VanWert further testified that he saw Ryan two cars in advance, applied the brakes as quickly as possible, and skidded up to him before the impact. He also admitted to seeing other people in the street by a vehicle and knew that he was approaching a playground. He testified that he may have been driving 35 miles per hour at the bridge, but claimed he slowed down before the accident.

VanWert testified that after playing softball, he drank two or three beers and two shots of root beer schnapps in a one hour and forty minute period. Two bartenders confirmed VanWert's testimony about his alcohol consumption. He went to have dinner at his mother's house and left. The accident occurred shortly thereafter.

Finally, VanWert testified that he was not under the influence of alcohol on the evening of the accident and that his ability to drive was not impaired. Several other witnesses testified that VanWert appeared normal at the bar. VanWert's mother and stepfather testified that he appeared normal when he was at their house.

## ISSUES

1. Did the trial court err in its additional instruction regarding the proof required to convict under Minn.Stat. § 609.21, subd. 2 (1986)?

2. Did the trial court err in its dispositional and durational departure from the sentencing guidelines?

3. Did the trial court err in allowing the victim to be present in the courtroom?

## ANALYSIS

### I. ADDITIONAL JURY INSTRUCTION

Minn.Stat. § 609.21, subd. 2 (1986) provides in pertinent part:

Whoever causes great bodily harm to another, as defined in section 609.02, subdivision 8, not constituting attempted murder or assault as a result of operating a vehicle defined in section 169.01, subdivision 2, or an aircraft or watercraft, * * *

(2) in a negligent manner while under the influence of alcohol, a controlled substance, or any combination of those elements; or

(3) in a negligent manner while having an alcohol concentration 0.10 or more, is guilty of criminal vehicular operation resulting in injury and may be sentenced to imprisonment for not more than three years or the payment of a fine of not more than $5,000 or both.

In its initial instruction to the jury, the trial court followed the instructions suggested in 10 Minnesota Practice, CRIM. JIG, 11.27 and 11.28 (1985). CRIM.JIG 11.- 27 restates the provisions of subdivisions 2(2) and 2(3). CRIM.JIG 11.28 reads in pertinent part:

**CRIMINAL VEHICULAR OPERA- TION RESULTING IN GREAT BODI- LY HARM—ELEMENTS**

The elements of criminal vehicular operation are:

First, defendant operated a [vehicle] in

\* \* \* \* \* \*

[2] a negligent manner while under the influence of (alcohol) * * *. "Operating a [vehicle] in a negligent manner" means to operate without using ordinary or reasonable care. "Operating a [vehicle] while under the influence of (alcohol) * * * " means operating the [vehicle]

when ability or capacity to operate was impaired by (alcohol) * * *.

\* \* \* \* \* \*

Second, such operation of the [vehicle] caused great bodily harm to _____. "Great bodily harm" means bodily harm which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any part of the body or other serious bodily harm.

\* \* \* \* \* \*

10 Minnesota Practice, CRIM.JIG, 11.28 (1985). The trial court also gave the definitions of negligence found in 4 Minnesota Practice, CIV.JIG, 101, 301, and 302 (1986). JIG 101 reads:

### NEGLIGENCE AND REASONABLE CARE—BASIC DEFINITION

Negligence is the failure to use reasonable care. Reasonable care is that care which a reasonable person would use under like circumstances. Negligence is the doing of something which a reasonable person would not do, or the failure to do something which a reasonable person would do, under like circumstances.

The trial court read parts of JIG 301 and JIG 302 which instructs that violation of a traffic statute can constitute negligence. In conjunction with JIG 302, the court read the speeding statute and summarized the law against driving while intoxicated.

After deliberating for several hours, the jury asked the trial court:

Does negligence beyond driving while intoxicated have to be proved? For example, speeding, it says or can driving while under the influence constitute negligence?

The trial court responded by stating that violation of a traffic statute such as speeding or driving too fast for existing conditions could constitute negligence. The court said that driving while intoxicated could constitute negligence. The court also reread JIGS 101 and 301.

■ VanWert argues the trial court erroneously instructed the jury in its addi-

tional instruction that driving while intoxicated could support a finding of negligence. We disagree.

■ In response to a jury's question, a court can give any additional instruction the court deems appropriate. Minn.R. Crim.P. 26.03, subd. 19(3). The court may amplify or reread the original instruction, or it can give no instruction. *State v. Murphy*, 380 N.W.2d 766, 782 (Minn.1986). Additional jury instructions that do not preclude consideration of other evidence are not erroneous. *See State v. Lindberg*, 408 N.W.2d 589, 593 (Minn.Ct.App.1987).

No Minnesota court has specifically addressed the question of whether Minn.Stat. § 609.21, subds. 2(2) and (3) require proof of negligence beyond driving while intoxicated. Regardless, we believe the trial court did not commit reversible error in stating that proof of driving while intoxicated could be negligence.

"Negligence is 'the doing of something which an ordinarily prudent person would not do * * * under like or similar circumstances.'" *State v. Munnell*, 344 N.W.2d 883, 886 (Minn.Ct.App.1984) (quoting *Erickson v. Van Web Equipment Co.*, 270 Minn. 42, 49, 132 N.W.2d 814, 819 (1964)). The trial court stated that driving while intoxicated could be negligence. We agree that proof of VanWert's driving while intoxicated could be evidence of negligence, especially in light of other evidence presented at trial.

Witnesses testified that they did not hear the sound of brakes until after the car hit Ryan. Finally, there was evidence that VanWert failed to maintain a proper lookout. He testified that he knew he was approaching a playground. He admitted that he knew people were in or near the street. Yet, there was evidence that Van-Wert may have been exceeding the posted speed limit or traveling faster than existing conditions allowed as he approached the playground.

■ Even if the trial court erred in its instruction, it was harmless. On appeal of a criminal conviction, a reviewing court will not set aside the conviction if a review of the whole record reveals that errors committed by the trial court are harmless beyond a reasonable doubt. *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986). A new trial will not be granted on the basis of errors committed by the trial court unless the errors have prejudiced substantial rights of an appellant. *Id.* *See also State v. Southard*, 360 N.W.2d 376, 383 (Minn.Ct. App.1985), *pet. for rev. denied* (Minn. April 12, 1985). The above standards apply to errors in jury instructions. *State v. Hayes*, 431 N.W.2d 533 (Minn.1988).

The trial court's initial instructions set forth in detail the definition of negligence in general and of negligence in traffic related cases. The court also correctly stated that violation of a traffic statute could be negligence. In its additional instruction, the court re-read parts of its original instruction. Only one sentence referred to whether driving while intoxicated could amount to the negligence required by section 609.21, subd. 2. Read in the context of the trial court's instructions as a whole, any error was harmless.

■ VanWert argues that section 609.21, subd. 2, requires a finding of gross negligence. Cases decided under the old version of section 609.21 required proof that the defendant's conduct was grossly negligent. *See State v. Hansen*, 296 Minn. 42, 46, 206 N.W.2d 352, 355 (1973); *State v. Olson*, 355 N.W.2d 760, 762 (Minn.Ct.App. 1984).

In 1983, the legislature amended the Minn.Stat. § 609.21 to include criminal vehicular operation resulting in injury. *See* 1983 Minn.Laws ch. 12, § 1. Minn.Stat. § 609.21 now specifically penalizes operation of a vehicle causing great bodily harm as a result of grossly negligent conduct. Minn.Stat. § 609.21, subd. 1 (1986). Subdivision 2 penalizes negligent operation of a vehicle. Minn.Stat. § 609.21, subd. 2 (1986). It does *not* require grossly negligent conduct. Therefore, VanWert's argument is meritless.

## II. DISPOSITIONAL AND DURATIONAL DEPARTURE

A trial court has discretion to depart both dispositionally and durationally from

the sentencing guidelines if the court finds substantial and compelling reasons to do so. Minnesota Sentencing Guidelines II.D. *State v. Garcia,* 302 N.W.2d 643, 647 (Minn.1981).

■ a. *Disposition.* On review of a trial court's decision to depart dispositionally from the Minnesota Sentencing Guidelines, an appellate court will not interfere unless it has a strong feeling that the departure is disproportionate to the offense. *State v. Anderson,* 356 N.W.2d 453, 454 (Minn.Ct.App.1984).

■ VanWert had a criminal history score of zero. Combined with his conviction under section 609.21, subd. 2(2), a severity level III offense, his criminal history score carried a presumptive sentence of probation. Minnesota Sentencing Guidelines IV. The trial court, however, sentenced VanWert to an executed sentence of 36 months. VanWert argues that the trial court erred in imposing an executed sentence of 36 months, rather than a presumptive sentence of probation. We disagree.

■ The central issue in a dispositional departure is whether the defendant's conduct was significantly more or less serious than typically involved in commission of the crime in question. *State v. Cox,* 343 N.W.2d 641, 643 (Minn.1984). A trial court's decision to depart dispositionally is justified when the defendant's conduct was especially egregious, or he or she appears to be unamenable to probation. *State v. Loitz,* 366 N.W.2d 744, 746–47 (Minn.Ct. App.1985). Thus, a dispositional departure may be justified by the likelihood of repetitive behavior. *State v. Nesler,* 376 N.W.2d 745, 746 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Jan. 17, 1986).

The trial court listed several reasons for its dispositional departure, including VanWert's violation of the conditions of his release: he was not to drive and he was to remain law abiding. There was evidence that on March 18, 1988, VanWert was involved in another alcohol-related automobile accident in which he was the driver. Witnesses at the subsequent accident told officers at the scene that VanWert was extremely intoxicated.

The trial court also took into consideration that VanWert was driving without insurance on June 29, the gravity of Ryan's injuries, and VanWert's disregard for the safety of others at the time of the accident in which Ryan was injured.

We find that the trial court did not abuse its discretion in deciding to execute VanWert's sentence. VanWert's involvement in another alcohol-related traffic mishap is evidence of a likelihood of repeating the behavior for which he was convicted and of his unamenability to probation.

Moreover, not only was VanWert drunk on June 29, 1987, he was extremely drunk, a fact evidenced by a blood alcohol level of .19. Evidence that VanWert may have been speeding on June 29, 1987, and that he knew he was approaching a playground further supports the trial court's decision to execute VanWert's sentence. Finally, evidence that VanWert was aware people were in the street near 912 Edgerton and still did not proceed with caution supported the trial court's decision to execute VanWert's sentence. These factors combined support the trial court's dispositional departure.

■ b. *Duration.* Generally, durational departures are limited to double the maximum sentence. *State v. Evans,* 311 N.W.2d 481, 483 (Minn.1981). A court may, however, depart from the maximum sentence by more than double if there are "severe aggravating circumstances" to justify the departure. *State v. Mortland,* 399 N.W.2d 92, 94 (Minn.1987). A court may use the same reasons for a durational departure as it did in imposing a dispositional departure. *Anderson,* 356 N.W.2d at 454. VanWert argues that the trial court erred in sentencing him to three years, a tripling of his maximum sentence for conviction under section 609.21, subd. 2(2). We disagree.

Once again, the trial court noted, and we are also inclined to note that VanWert was not merely drunk; he was very drunk. The breathalyzer tests administered showed that his blood alcohol content was

nearly twice the legal limit. In addition, VanWert acknowledged at trial that he knew he was approaching an area where pedestrians would be present. Yet there is evidence he did not reduce his speed before hitting Ryan. Finally, on June 29, 1987, VanWert was driving without insurance, in apparent disregard of injuries he might inflict.

VanWert argues that the trial court erred in including the nature of Ryan's injuries as a basis for its departure because infliction of great bodily harm is an element of the offense. Seriousness and permanence of a victim's injuries may be an aggravating factor justifying a durational departure even if injury is an element of the crime. *State v. Van Gorden,* 326 N.W. 2d 633, 634–35 (Minn.1982).

Ryan's injuries were such that there was a high probability of death. He required hospitalization for six months. He sustained such significant brain damage that he will never lead a normal life. Given the extent and permanence of Ryan's injuries, the trial court correctly considered them in its decision to impose a durational departure.

VanWert argues that the impact of the accident on the O'Briens should not have been considered in deciding whether to depart durationally. It is not clear whether the trial court considered this factor in imposing its sentence, but even if it did, it did not commit error. *See State v. Bicek,* 429 N.W.2d 289, 293 (Minn.Ct.App. 1988), *pet. for rev. denied* (Minn. Nov. 23, 1988) (emotional trauma need not be the result of an intentional crime); *State v. Garcia,* 374 N.W.2d 477, 480 (Minn.Ct.App. 1985) (emotional trauma of family members may justify departure).

## III. PRESENCE OF VICTIM

At trial, all relevant evidence is admissible. Minn.R.Evid. 402. If, however, the potential for prejudice substantially outweighs the probative value of a piece of evidence, the trial court may exclude it. Minn.R.Evid. 403. VanWert argues that the trial court erred in allowing Ryan to be present in the courtroom.

Although Ryan's appearance may have been shocking, it was not so prejudicial as to forbid Ryan's presence. In addition, we note that Ryan was not admitted into evidence nor, as appellant admits in his brief, was Ryan used for any demonstrative purpose. His presence is not a basis for reversal.

### DECISION

The trial court did not commit reversible error in instructing that the state was not required to prove negligence separate from driving while under the influence of alcohol. Any error was harmless. The trial court also did not err in sentencing appellant to 36 months in prison. The trial court properly allowed the victim to be present in the courtroom.

Affirmed.