STATE of Minnesota, Respondent,

v.

Gerald Charles RASINSKI, Appellant.

No. C4–90–1010.

Supreme Court of Minnesota.

Aug. 2, 1991.

Arden Fritz, Douglas Sauter & Associates, Coon Rapids, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Robert A. Stanich, Asst. Atty. Gen., St. Paul, for respondent.

WAHL, Justice.

Defendant Gerald Charles Rasinski was convicted of four felony counts of criminal vehicular operation [CVO] resulting in death, two gross misdemeanor counts of DWI, and one misdemeanor count of careless driving all arising out of a motor vehicle accident on July 4, 1989 in Chisago County in which two 19–year–old men were killed. The trial court sentenced defendant on two counts of CVO, one count for each victim. For each count the trial court stayed execution of the presumptive 18 month prison sentence and placed defendant on probation for two consecutive 5–year periods. Terms and conditions of probation included two twelve-month terms of probationary jail time, served consecutively for a total of twenty-four months. The court of appeals panel unanimously affirmed his convictions and affirmed his sentence in a 2–1 decision.

Before this court, defendant seeks a new trial on the ground that the trial court erred by precluding the testimony of a defense witness as a sanction for non-disclosure of the witness. He also claims errors with respect to sentencing. The primary issue on appeal is whether, and under what circumstances, a defendant has the right to refuse probation and demand execution of sentence. We affirm the convictions, reverse the order denying execution of sentence and remand.

I

This case arises from a motor vehicle accident which caused the death of Wayne Faris and Brett Callan. The accident occurred in the early morning hours of July 4, 1989 at U.S. Highway 8 and Pioneer Road in Chisago County.

On the evening of July 3, 1989, defendant got off work at Elk River Goodyear at 8:30 p.m. He then went to a local liquor store and bought a case of beer and bags of ice. He put the beer and ice into a cooler in the back of his van and drove to Lake Orono to meet some friends at a picnic. Defendant testified that he drank two beers at Lake Orono before leaving the lake at 10:30 p.m. to drive to Anoka. On the way to Anoka, defendant saw his friend, Randy Steen, at Houle Oil where Steen worked. Steen asked defendant if he wanted to go to a party. Steen and two

friends followed defendant to defendant's house, left Steen's car there, and joined defendant in his van. Defendant testified that he was driving while the others were drinking beer in the back of the van. Steen testified that defendant had a couple of beers while he was driving. Defendant testified that he drank one beer in the parking lot of an apartment where the group stopped to invite Steen's friend to the party.

The group traveled to Blaine in search of a party but did not find one. Defendant then decided to drive to Wisconsin to visit his girlfriend and go fishing. The group headed toward Wisconsin but Steen soon changed his mind and asked to be taken back to his car. Defendant pulled into a convenience store parking lot in order to turn around and remained in the van while the others went inside to buy food. Defendant testified that he drank his fourth and final beer while waiting in the parking lot.

Defendant drove back to his home to return Steen and the others to Steen's car. Steen testified that he told defendant not to drive to Wisconsin because it was a long drive to make that late at night and because it was the Fourth of July and lots of police would be out on the road. He also testified that he feared that defendant might get a DWI, although he subsequently denied that his concern for defendant was related to defendant's alcohol consumption. Defendant denied that Steen warned him not to drive to Wisconsin.

Defendant left Steen and the others and drove toward Wisconsin. At approximately 1:00 a.m., defendant was driving east on Highway 8. Wayne Faris and Brett Callan were traveling west on Highway 8. The collision occurred shortly after 1:00 a.m., when defendant's van entered the westbound lane and struck the vehicle Callan was driving. The front of defendant's van struck the passenger side of the other vehicle. Faris and Callan were killed.

Defendant testified at trial that he had veered into the westbound lane in order to avoid a car that was heading toward him in his own lane. Accident reconstruction experts presented evidence at trial confirming that defendant's van was traveling in the wrong lane at the time of the accident, but could not establish how quickly or under what circumstances his van entered the wrong lane.

Defendant was taken from the accident scene to the hospital, where he agreed to a blood test after being read the Minnesota Implied Consent Advisory. A medical lab technician drew two blood samples from defendant, one for the hospital and one for the Bureau of Criminal Apprehension [BCA]. The result of the hospital's blood test revealed .16 blood alcohol concentration [BAC]. The result of the BCA's test was .13 BAC. Several law enforcement officers and the medical lab technician who drew defendant's blood testified that they smelled alcohol on defendant's breath, that his eyes were red and watery, and that his speech was affected in some way. Each had formed the opinion that defendant was intoxicated or under the influence of alcohol that morning.

Defendant had a conversation with Randy Steen several days after the accident. According to a statement Steen later gave police, defendant told Steen in that conversation that he did not remember much about the accident and that he must have fallen asleep behind the wheel. At the close of the defendant's case, defendant sought to introduce the testimony of Susanetta Rasinski, his mother, for the purpose of impeaching Steen's testimony. Rasinski had not been included on defendant's witness list, however, and the trial court concluded that defendant was not entitled to call her as a witness.

The jury convicted defendant of four counts of criminal vehicular operation resulting in death (two counts of CVO while under the influence of alcohol, Minn.Stat. § 609.21, subd. 1(2), and two counts of CVO while driving with an alcohol concentration of .10 or more, Minn.Stat. § 609.21, subd. 1(3)). The jury also convicted defendant of one gross misdemeanor count of driving while under the influence (Minn. Stat. § 169.121, subds. 1(a), 3(a)), one gross misdemeanor count of driving with an alcohol concentration of .10 or more (Minn.Stat.

§ 169.121, subds. 1(c), 3(a)), and one count of careless driving (Minn.Stat. § 169.13, subd. 2). The jury acquitted defendant of two counts of CVO requiring proof of gross negligence.

The trial court sentenced defendant on two of the four CVO counts, imposing consecutive 18–month terms for each count. The court then stayed the sentences and placed defendant on probation for five years for each count, the terms of probation to run consecutively for a total of ten years probation. The terms and conditions of each probation included a 12–month term in the Chisago County jail. The trial court departed from the sentencing guidelines by requiring the two 12–month probationary sentences to be served consecutively. Additional conditions of probation imposed were as follows: Defendant must (1) undergo chemical dependency and psychiatric evaluation and follow all recommendations, (2) attend Alcoholics Anonymous for two years, (3) refrain from all use of alcohol and non-prescription drugs, (4) violate no law, (5) pay restitution for all uninsured losses (6) forego all use, operation or ownership interest in any motor vehicle and (7) submit to urine analysis upon demand by any law enforcement agent at any time during probation.

On May 1, 1990, defendant moved the trial court to revoke his probation and execute his sentence. The trial court denied that motion. The court of appeals panel unanimously affirmed defendant's convictions and affirmed the trial court's sentencing in a 2–1 decision. *State v. Rasinski*, 464 N.W.2d 517 (Minn.App.1990), *rev. granted* (Minn. Feb. 6, 1991).

## II

We first consider whether the trial court erred in precluding, as a discovery sanction, the testimony of a defense witness. At the close of the trial, defendant sought to call his mother, Susanetta Rasinski, to testify. His stated purpose for calling Rasinski was to impeach the testimony of Randy Steen. Defendant, however, had failed to include Rasinski on the witness list he disclosed to the prosecutor pursuant to Minn.R.Crim.P. 9.02, subd. 1(3)(a). The trial court, relying on *State v. Lindsey*, 284 N.W.2d 368 (Minn.1979), precluded Rasinski's testimony as a sanction for violating discovery rules.

Under Minn.R.Crim.P. 9.03, subd. 8, the trial court may sanction a party for discovery violations. We have articulated four factors that a trial court should consider in exercising that discretion: "(1) the reason why disclosure was not made; (2) the extent of prejudice to the opposing party; (3) the feasibility of rectifying that prejudice by a continuance; and (4) any other relevant factors." *Lindsey*, 284 N.W.2d at 373. In *Lindsey*, the defendant, after two separate discovery requests, supplied the prosecutor with names of only two of eight witnesses he intended to call at trial. *Id.* at 372–73. There was no apparent justification for the lack of disclosure. The state was prejudiced by Lindsey's failure to disclose six witnesses and the case was too far into trial to consider a continuance adequate in length to allow the state to prepare for their testimony. *Id.* at 373–74. The trial court precluded testimony of two of the six undisclosed witnesses which this court deemed relatively unimportant. *Id.* at 374. The remaining four undisclosed witnesses were allowed to testify for the defendant.

In this case, defendant argued that Rasinski's testimony was necessary to impeach unexpected trial testimony from prosecution witness, Randy Steen. As noted by the trial court, defendant had ample notice of the state's intent to call Steen and had copies of Steen's statement to police. However, there was nothing to indicate that defendant's failure to disclose was intentional or calculated. Rather, it appears that defendant had simply failed to anticipate the degree to which Steen's testimony might damage his case.

Unlike *Lindsey*, it does not appear from the circumstances in this case that allowing this defense witness to testify would have significantly prejudiced the state. While the record is not clear, it appears that Rasinski would have testified that in her conversations with Steen, he somehow con-

tradicted his statement to police that defendant told him that defendant must have fallen asleep behind the wheel on the night of the accident. No amount of investigation is required to confront a witness of this sort. A continuance for one hour would have allowed the prosecutor to interview the witness and prepare for her testimony.

According to *Lindsey*, "[p]reclusion of evidence is a severe sanction which should not be lightly invoked." *Id.* at 374. Our cases may be read to condone the preclusion of a witness only in extreme cases of violation of discovery rules by a defendant, where prejudice to prosecution cannot be cured by any other means. Accordingly, the trial court's ruling in this case was in error.

■ That error, however, was harmless beyond a reasonable doubt. *See Id.* at 374. As was the case in *Lindsey*, the precluded testimony was relatively unimportant. First, while the evidence was proffered to impeach Steen's statement that defendant told him that he fell asleep at the wheel, Steen admitted on cross-examination that he could not remember exactly what defendant had told him. Second, evidence that defendant was driving in the wrong lane of traffic with a blood alcohol concentration of .13 provided ample basis for his convictions of alcohol-related CVO, irrespective of subsequent admissions that he fell asleep at the wheel[1]. We therefore hold the trial court erred in this case in precluding the testimony of a defense witness as a discovery sanction, but that error was harmless beyond a reasonable doubt[2].

1. For instance, even if defendant's account of the accident—that he swerved into the opposite lane to avoid an oncoming car in his lane—were true, it is possible for a jury to conclude that, had defendant not been under the influence of alcohol, he may have avoided the oncoming car in a manner that also would have avoided the collision in the opposite lane.

2. Having concluded that the trial court abused its discretion under Minn.R.Crim.P. 9.03, subd. 8, we do not address defendant's constitutional arguments against witness preclusion, but we note that had there been constitutional error, it

### III

We now address defendant's claims of error with respect to imposition of his sentence. Defendant first claims that the trial court findings did not justify a departure under the Minnesota Sentencing Guidelines[3].

The decision to depart is based upon the inquiry of "whether the defendant's conduct was significantly more or less serious than that typically involved in the commission of the crime in question." *State v. Cox*, 343 N.W.2d 641, 643 (Minn.1984). The trial court stated the following grounds for departure: (1) defendant had three prior alcohol-related offenses since 1983 and was on probation for a prior DWI at the time of the offense; (2) defendant was operating his vehicle without insurance on the night of the accident; (3) defendant failed to heed warnings from a friend not to drive on the night of the accident; and (4) the "manifest lack of necessity for the trip."

■ Defendant asserts that the trial court inappropriately considered defendant's three prior alcohol-related offenses as a factor supporting departure because those offenses had already been relied upon in determining his criminal history score and thus his presumptive sentence. *See State v. Brusven*, 327 N.W.2d 591, 593 (Minn.1982) (ordinarily inappropriate for sentencing court to use as basis for departure the same facts relied upon in determining presumptive sentence).

The court of appeals correctly noted, however, that none of defendant's prior offenses were included in his criminal history score. *Rasinski*, 464 N.W.2d at 524. Although noted on his sentencing worksheet, defendant's one prior misdemeanor

too, would be rendered harmless beyond a reasonable doubt under the facts of this case.

3. The parties agree that the imposition of consecutive stayed sentences constituted a departure here because, although defendant was "convicted of multiple current felonies against different persons," his first sentence was stayed and therefore not "executed according to the guidelines." *See* Minnesota Sentencing Guidelines II.F.; *See State v. Lindsey*, 314 N.W.2d 823, 825 (Minn.1982).

offense of record amounted to one-fourth of a point and did not affect the ultimate criminal history score. There was, therefore, no double consideration of his prior offenses for purposes of sentencing, which is presumably the prejudice the *Brusven* rule is intended to prohibit.

Further, this court has approved the consideration of prior DWI offenses in departure decisions on cases involving criminal negligence resulting in death. *See State v. McGee,* 347 N.W.2d 802, 806 (Minn.1984) ("we believe that defendant's prior convictions of DWI bear on an evaluation of his conduct and render his conduct more serious."). *Accord State v. Loitz,* 366 N.W.2d 744, 747 (Minn.App.1985) *rev. denied* (Minn. July 17, 1985) (a history of chemical abuse and disregard for its effects is a valid factor to consider for purposes of sentencing departure).

■ We also reject defendant's claim that his lack of insurance was an improper consideration for departure. We agree with the trial court that a lack of insurance shows "callousness towards other motorists, or at the very best, ... inadvertence toward the duty he owes to other motorists", is a valid consideration of the seriousness of the charged offense, and is not, as defendant claims, an improper consideration of his guilt of a separate crime.

■ Because the first two grounds used by the trial court to justify departure are sufficient, we find it unnecessary to address the remaining two grounds, neither of which is particularly egregious. We hold the findings of the trial court adequately support the departure from the sentencing guidelines.

### IV

The major issue raised by this appeal is whether the trial court erred when it denied defendant's motion to vacate the probation order and execute sentence. Defendant argues that the conditions of his probation render the probationary sentence more onerous than the executed sentence.

■ This court first considered a defendant's right to refuse probation and demand execution of sentence in *State v. Randolph,* 316 N.W.2d 508 (Minn.1982). We concluded as follows:

> We believe there is merit to the argument that if the conditions of probation make probation more onerous than prison and if it cannot be demonstrated that society's interests suffer by vacating the probation sentence, the defendant should be allowed to refuse probation and demand execution of sentence.

*Id.* at 510. In a series of subsequent cases, we have applied *Randolph,* holding that a defendant has the right to refuse probation and demand execution of sentence when the conditions of probation make probation more onerous than prison. *See State v. Milbrad,* 355 N.W.2d 706 (Minn.1984); *State v. Ott,* 341 N.W.2d 883 (Minn.1984); *State v. Wilwert,* 317 N.W.2d 346 (Minn. 1982); *State v. Murto,* 316 N.W.2d 739 (Minn.1982); *State v. Smith,* 316 N.W.2d 562 (Minn.1982). In each case we remanded, making it clear, as in *Randolph,* that:

> the trial court should be given the opportunity, if it chooses, to reduce the probationary jail time imposed on the defendant, thereby removing much of the incentive for the defendant to insist upon execution of the prison sentence. However, if the defendant still insists on refusing probation, the execution of the original prison sentence should be ordered.

*Smith,* 316 N.W.2d at 562.

In the instant case, the court of appeals majority characterized the *"Randolph* test" as one including "two independent prongs: onerousness of the probation sentence and society's interest." *Rasinski,* 464 N.W.2d at 526 n. 9. The court of appeals majority concluded that the denial of defendant's motion to execute sentence could be affirmed on the grounds that " 'society's interests [would] suffer by vacating the probation sentence.' " *Id.* at 526 (quoting *Randolph,* 316 N.W.2d at 510). Never has this court relied on the "society's interest" language in *Randolph* as an independent basis to deny a defendant's request to refuse probation and execute sentence. To do so would thwart the rea-

soning underlying *Randolph*, where we observed that a probationary sentence that is more onerous than the presumptive prison sentence constitutes a de facto departure from the spirit, if not the letter, of the Minnesota sentencing guidelines. The extent of our emphasis on society's interest in a defendant's probationary sentence has been to suggest, consistently in these cases, that the trial court consider reducing probationary jail time imposed to encourage the defendant to take probation. Our intent in *Randolph* was captured by Judge Sedgwick in *State v. Sutherlin*, 341 N.W.2d 303 (Minn.App.1983), where she said:

> We read *Randolph* as recognizing society's interest in rehabilitative measures as being a valid reason for reducing defendant's likelihood of demanding the execution of sentence [by reducing probationary jail time to one-half the duration of the presumptive sentence, as recommended by this court in *Randolph*] but requiring the court to order execution of sentence where defendant still insists on prison.

*Id.* at 306.

The *Randolph* decision reflects a balancing of society's interest in the rehabilitative aspects of probation and defendant's right to be sentenced fairly under the law. Under our caselaw, the defendant has a right to demand execution of the presumptive sentence when the probationary sentence is more onerous even if society's interest appears, as in this case, to be better served by the probationary sentence.[4]

■ The court of appeals, having based its affirmance on the societal interests analysis, did not reach all aspects of defendant's argument with respect to onerousness. It addressed the question of whether defendant's probationary sentence was more onerous than the presumptive prison sentence only in terms of the relative lengths of incarceration. It dismissed defendant's argument that the determination requires a review of all conditions of probation, including here a lack of rehabilitative and treatment programs in county jails and denial of use, operation or ownership of a motor vehicle for ten years, as an "expansion" of the onerous test that was not supported by authority. *Rasinski*, 464 N.W.2d at 526. To the contrary, *Randolph* and its progeny refer to the "conditions of probation" of which length of incarceration is only one. It cannot be disputed that the cumulative effect of the probationary conditions imposed on this defendant created a more onerous sentence than the executed prison sentence prescribed by the sentencing guidelines. The court of appeals erred in affirming the trial court's denial of defendant's motion to revoke his probation and execute his sentence.[5]

We affirm defendant's convictions but reverse the order denying execution of sentence and remand to allow the trial court to consider modifying conditions of probation to make them less onerous than his prison sentence. If defendant continues to refuse probation, execution of sentence should be ordered.

Convictions affirmed; order denying execution reversed; remanded.

---

4. We note that society's interest in also served, albeit in a different way, by the execution of the sentence prescribed by the sentencing guidelines.

5. Now, because we reverse on the issue of defendant's demand for execution of sentence, we do not reach the issue of whether the trial court erred in sentencing the defendant, as a condition of probation, to twenty-four months in the county jail.