STATE of Minnesota, Respondent,

v.

Richard Gregory HERRMANN, Appellant.

No. CX-91-1006.

Court of Appeals of Minnesota.

Jan. 14, 1992.

Review Denied March 19, 1992.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., Gary S. McGlennen, Asst. County Atty., Minneapolis, for respondent.

John M. Stuart, State Public Defender, Cathryn Middlebrook, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by SCHUMACHER, P.J., and KLAPHAKE and DAVIES, JJ.

## OPINION

SCHUMACHER, Judge.

Appellant Richard Herrmann alleges the sentencing court erred in imposing a sixty-percent upward durational departure from the presumptive sentence for his conviction for criminal vehicular operation resulting in injury. Minn.Stat. § 609.21, subd. 2 (1990). The sentencing court listed a number of reasons for its departure. We affirm the departure for reasons other than those listed by the sentencing court.

## FACTS

In September 1990, appellant was doing outdoor work at his sister's residence while she and her husband were away on vacation. He made an unauthorized entry into the home and began drinking some wine and beer he found inside. Appellant then took his sister's automobile without her permission after finding the key in the glove box. He brought a bottle of wine with him and continued drinking. He acknowledged that the alcohol may have affected his driving. He drove to a friend's house in Eden Prairie and drank more alcohol there. Although the friend pleaded with him not to drive, he left in the car. He later decided to return to the friend's house. Appellant was trying to use the car phone as he made a left-hand turn in front of an oncoming car and a collision occurred.

Randall and Rae Hoglund and their nine-week old daughter were in the other car. Mr. Hoglund suffered a fracture of his left kneecap and had surgery to repair the damage. He was hospitalized for eight days, with his knee immobilized. He will not be able to return to his job as a pipefitter. Mrs. Hoglund suffered a fractured right clavicle, fractured ribs, a fracture of the right transverse process of the C–7 vertebra, and a lacerated liver. Mrs. Hoglund was hospitalized for five days, and had surgery to repair the lacerated liver. She will most likely recover from her physical injuries but still suffers emotional trauma. Appellant was charged with two counts of criminal vehicular operation resulting in great bodily harm (Minn.Stat. § 609.21, subd. 2(2)), two counts of criminal vehicular operation while having an alcohol concentration of .10 or more (Minn.Stat. § 609.21, subd. 2(3)), and one count of theft of a motor vehicle (Minn.Stat. § 609.52, subd. 1(10), 2(17), and 3(2)). Appellant pleaded guilty to the two counts of criminal vehicular operation resulting in great bodily

harm and the other charges were dismissed.

Prior to sentencing, the state filed a motion for an upward durational departure to 60 months, the statutory maximum. A sentencing hearing was held. The state presented the testimony of the Hoglunds as to the impact of the accident on them, and an affidavit of Chris Krueger, appellant's probation officer.

Appellant's father, Richard Herrmann, Sr., spoke on behalf of appellant. He told of the effect a July 1990 motorcycle accident had had on appellant. Although appellant had had some alcohol-related driving offenses in the mid-eighties, he apparently had achieved sobriety for the two years preceding the motorcycle accident. Appellant suffered a brain injury from the motorcycle accident and nearly died. Appellant apparently attempted suicide shortly after the motorcycle accident. Appellant's wife began divorce proceedings and appellant went into a deep depression. Appellant was hospitalized in a mental ward and put on the drug Prozac. According to Mr. Herrmann, Sr., appellant became a very different person while on Prozac. Most notably, he began drinking again. (Appellant has subsequently been taken off Prozac and claims to have achieved sobriety once again.)

After hearing the testimony, the trial court sentenced appellant to a 27–month stayed sentence for the first infraction (the presumptive sentence) and a 48–month executed sentence for the second infraction (an upward durational departure from the presumptive sentence of 30 months executed).

This appeal resulted.

### ISSUES

1. Do the trial court's stated reasons justify its decision to make an upward durational departure from the presumptive sentence?

2. Are there alternative grounds on the record which would make the departure proper?

### ANALYSIS

#### I. Standard of Review.

■ The purpose of the Minnesota Sentencing Guidelines is to establish rational and consistent standards in order to reduce sentencing disparity and to ensure that sanctions following conviction of a felony are proportional to the severity of the offense of conviction and the extent of the offender's criminal history. Minn. Sent. Guidelines I. Because these purposes will not be achieved if judges fail to follow the guidelines in the "general" case, a sentencing court should use the presumptive sentence unless the particular case involves "substantial and compelling circumstances." *State v. Garcia*, 302 N.W.2d 643, 647 (Minn.1981); Minn. Sent. Guidelines II.D. If the trial court finds that aggravating or mitigating circumstances are present, however, the trial judge has broad discretion to depart from a presumptive sentence. *State v. Best*, 449 N.W.2d 426, 427 (Minn.1989). Upon review, this court should overturn only when the trial court exceeds its discretion in setting the sanction. *State v. Schantzen*, 308 N.W.2d 484, 487 (Minn.1981). The guidelines provide:

when departing from the presumptive sentence, a judge must provide written reasons which specify the substantial and compelling nature of the circumstances, and which demonstrate why the sentence selected in the departure is more appropriate, reasonable or equitable than the presumptive sentence.

Minn. Sent. Guidelines, II.D; *Williams v. State*, 361 N.W.2d 840, 843 (Minn.1985). The Minnesota Supreme Court has set down some "general rules" for reviewing a trial court's departure from the presumptive sentence. They include the following:

1. If reasons for departure are stated on the record, this court will examine the record to determine if the reasons given justify the departure.

2. If the reasons given justify the departure, the departure will be allowed.

3. If the reasons given are improper or inadequate, but there is sufficient ev-

idence in the record to justify departure, the departure will be affirmed.

4. If the reasons given are improper or inadequate and there is insufficient evidence of record to justify the departure, the departure will be reversed.

*Williams*, 361 N.W.2d at 844. In the present case, the trial judge stated his reasons for an upward durational departure (48 months) from the presumptive (30–month) sentence. We must then examine these reasons and the record as a whole to determine whether the departure should be affirmed.

## II. Trial Court's Reasons for Upward Durational Departure.

■■■■ When deciding whether to depart durationally, the trial court must determine that "the defendant's conduct was significantly more or less serious than that typically involved in the commission of the crime in question." *State v. Cox*, 343 N.W.2d 641, 643 (Minn.1984). The court should not analyze the egregiousness of the act in and of itself, but must rather analyze the act as compared with other acts constituting the same offense. If a particular aspect of the crime or the defendant's background is considered in the presumptive sentence, that fact cannot be considered an aggravating circumstance justifying an upward departure.

### A. *Amenability to Treatment.*

■■ The trial judge detailed the numerous alcohol programs in which the defendant had participated. The court recognized that the defendant had eventually achieved sobriety for a couple years before experiencing a relapse. The court also recognized that the defendant's motorcycle accident, divorce, and treatment with the drug Prozac might have triggered the relapse, at least in part. The trial judge stated, however, that the defendant had a great deal of support resources at his disposal and did not utilize these resources to help himself. The trial judge also stated that every person is faced with difficulties and adversity in his or her life, and one should not use these problems as an excuse

for culpable behavior. The trial judge decided the defendant was not amenable to treatment and based his decision to depart in part on that conclusion.

The trial court's decision that appellant is not amenable to treatment is not a valid reason for a *durational* departure. The defendant's amenability to probation or treatment is a relevant factor in determining whether a *dispositional* departure is warranted, but does not appear to bear on the issue of the appropriate duration of a sanction.

The guidelines state that "decisions with respect to disposition and duration are logically separate." Minn. Sent. Guidelines comment II.D.02. The guidelines also warn against allowing social and economic factors to factor into the "amenable to probation (or treatment)" justification for a *dispositional* departure. The inference that amenability to treatment is relevant toward deciding the appropriate disposition, but not duration, is unavoidable. Furthermore, drawing this inference is no longer necessary to reach this conclusion:

> A defendant's unamenability to probation and his dangerousness are perpetrator-related factors that bear on a decision whether to depart dispositionally but that do not bear on a decision whether to depart durationally.

*State v. Ott*, 341 N.W.2d 883, 884 (Minn. 1984). Other cases support this conclusion without specifically stating it. *See, e.g., State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982); *State v. Loitz*, 366 N.W.2d 744, 746 (Minn.App.1985); *State v. Carter*, 424 N.W.2d 821, 824 (Minn.App.1988); *State v. Champion*, 413 N.W.2d 161 (Minn.App. 1987).

These decisions appear sound both in view of the guidelines' comments and in terms of logic and equity. If a defendant's unamenability to treatment or probation was a factor in the decision to incarcerate him rather than grant him probation, then it constitutes a double penalty to also use this factor to lengthen his incarceration

period.[1] The trial judge should not have considered appellant's amenability to treatment when deciding whether or not to extend appellant's period of incarceration.

### B. *Appellant's Prior Alcohol-related Offenses.*

■ The trial judge also mentioned appellant's previous problems with drinking and driving when discussing his reasons for departure. The court stated, "You have had an extended period of your life involved with drinking and erratic driving." The court also made several references to insuring the public safety against the appellant's speculated future offense(s). The court seemed determined to "take [appellant] off the streets for as long a period of time as possible." Using appellant's prior offenses and speculating as to his future offenses as a basis for upward departure (in the name of "public safety") is improper.

■ Appellant's prior offenses were considered in arriving at the presumptive sentence of 30 months.[2] Appellant's prior D.W.I.'s garnered an additional point on his criminal history score. Appellant had also received a criminal history point for being on probation for his Washington County D.W.I. at the time of the present offense. "[I]t is inappropriate for the sentencing court to use as a basis for departure the same facts which are relied upon in determining the presumptive sentence." *State v. Brusven*, 327 N.W.2d 591, 593 (Minn. 1982). Since appellant's prior history of alcohol-related offenses was considered in establishing the presumptive sentence it should not have been used as a basis for departure.[3]

■ The trial court also used appellant's priors as a basis for an additional justification for the upward departure— protecting the public. This reasoning is also improper:

> Our system of criminal law permits the confinement of persons for acts they have committed, but does not permit present confinement for acts which may be committed in the future.

*State v. Partlow*, 321 N.W.2d 886, 887 (Minn.1982). The trial court cannot speculate as to what future offenses appellant might commit in determining the proper length of incarceration. *See State v. Magnan*, 328 N.W.2d 147, 150 (Minn.1983). To allow such a practice would effectively validate any sentence, no matter how extreme.

### C. *The Extent of the Victims' Injuries.*

■ The trial judge also described in detail the extent and seriousness of both victims' injuries as a reason justifying his departure. Relying on the extent of the victims' injuries, *in this specific case*, was also an improper justification for the upward departure.

■ When analyzing this issue, the court must keep in mind the basic criteria for an upward durational departure:

> [T]he trial court must decide whether a defendant's conduct was significantly more or less serious than that typically involved in the commission *of the crime in question.*

*State v. Anderson*, 463 N.W.2d 551, 553 (Minn.App.1990) *pet. for rev. denied* (Minn. Jan. 14, 1991) (emphasis added). While the consequences of a defendant's act might be quite serious, if such serious consequences are *required* in the very commission of the

---

**1.** Some decisions have held that a "court may use the same reasons for a durational departure as it did in imposing a dispositional departure." *State v. VanWert*, 438 N.W.2d 416, 422 (Minn. App.1989) *rev'd on other grounds*, 442 N.W.2d 795 (Minn.1989); *see also State v. Anderson*, 356 N.W.2d 453, 454 (Minn.App.1984). The reasons used as justification for both types of departure in those cases were other than amenability to probation, however.

**2.** Additionally, because appellant's crime touched two victims, the presumptive sentence

was based on this being appellant's *second* offense for criminal vehicular injury resulting in great bodily harm (Minn.Stat. § 609.21, subd. 2). *State v. Hernandez*, 311 N.W.2d 478 (Minn. 1981) allows this.

**3.** *Cf. State v. Rasinski*, 472 N.W.2d 645, 649–50 (Minn.1991), wherein the sentencing court was allowed to consider prior D.W.I.'s as a factor in supporting an upward departure where priors were *not* included in the criminal history score.

act, they cannot be grounds for a departure from the guidelines.

Appellant pleaded guilty to criminal vehicular operation resulting in injury. Minn. Stat. § 609.21, subd. 1(2) (1990). A violation of this particular statute *requires* that the victim suffer "great bodily harm" at the hands of the perpetrator. "Great bodily harm" is an *element* of the crime itself. The statutes define "great bodily harm" as:

bodily injury which creates a high probability of death, or which creates serious permanent disfigurement, or which causes a permanent or protracted loss of impairment of the function of any bodily member or organ or other serious bodily harm.

Minn.Stat. § 609.02, subd. 8 (1990). Because a violation of Minn.Stat. § 609.21, subd. 2(2) requires that the victim suffer serious injury, presumably the legislature took into account these consequences when they set the presumptive sentence for this crime.

Factors taken into account by the legislature in determining the elements or degree of the crime may not be considered. *State v. Ahern*, 349 N.W.2d 838, 841 (Minn. App.1984). This court has stated specifically that when causing serious, permanent bodily harm is an element of the crime itself, such injury cannot be used as a reason for an upward durational departure from the presumptive sentence for that crime. *State v. Saharath*, 355 N.W.2d 312, 314 (Minn.App.1984).

The state argues that the seriousness of the victims' injuries can be used as an aggravating factor even when the offense charged requires serious bodily injury. The state cites *State v. VanWert*, 438 N.W.2d 416 (Minn.App.1989), *rev'd on other grounds*, 442 N.W.2d 795 (Minn.1989), as authority for this position. *VanWert* also dealt with Minn.Stat. § 609.21, subd. 2—causing "great bodily harm" by negligent operation of a motor vehicle. The *VanWert* court upheld an upward durational departure based primarily on the serious-

ness and permanence of the victim's injuries. The opinion cited *State v. VanGorden*, 326 N.W.2d 633 (Minn.1982) as authority for this position:

Seriousness and permanence of a victim's injuries may be an aggravating factor justifying a durational departure even if injury is an element of the crime.

*VanWert*, 438 N.W.2d at 423 (citing *VanGorden*, 326 N.W.2d at 634–35). Although the *VanGorden* court did in fact state that the permanence and seriousness of the victim's injuries could be considered an aggravating factor *in that particular case*, a crucial distinction between that case and both the *VanWert* case and this case must be recognized.

In *VanGorden*, the court was analyzing a sentencing departure for the crime of first degree criminal sexual conduct. Minn.Stat. § 609.342(e) (1980).[4] Although "injury" is an element of that offense, *"great bodily injury"* is not. Because the victim in *VanGorden* suffered serious injuries *well beyond* those required to constitute the crime charged, the departure could be justified on those grounds in that case. When "injury" without qualifying adjectives of degree is all the offense requires, the presumptive sentence does not take into account *"serious* bodily harm." When the crime charged requires "injury" alone, then the sentencing court can depart from the presumptive sentence when the victim's injuries are serious. The courts have so held on many occasions. *State v. Cox*, 343 N.W.2d 641 (Minn.1984); *State v. Partlow*, 321 N.W.2d 886 (Minn.1982); *State v. Johnson*, 359 N.W.2d 698 (Minn.App.1984).

When the crime charged requires "great bodily harm," however, (as with Minn.Stat. § 609.21, subd. 2) the legislature has already factored in the seriousness of the victim's injuries in setting the presumptive sentence. Therefore, the seriousness and permanence of the victim's injuries cannot be an aggravating factor making the appellant's conduct atypical of that generally involved in the commission of the offense.

---

4. "A person is guilty of criminal sexual conduct in the first degree * * * if he engages in sexual penetration with another person and * * * the actor causes personal injury to the complainant."

If the victims in the present case had not suffered serious and permanent injuries, the court could not have properly accepted appellant's guilty plea for the crime requiring "great bodily harm." Because serious and permanent injuries are contemplated in the presumptive sentence, the departure cannot be justified on that ground.[5]

### D. The Fact that the Vehicle was Stolen.

The trial judge also listed the appellant's

> conduct with the taking of [his] sister's car on two occasions, the second one resulting in what we have before us today.

as a reason for an upward departure. This appears to be an appropriate justification for a longer sentence than that proposed by the guidelines. The offense charged does not contemplate a stolen vehicle. In that way, appellant's crime was somewhat "atypical" of the conduct generally associated with the crime in question.

### III. Other Factors in the Record not Stated by the Trial Court.

Because *Williams*, 361 N.W.2d at 844, directs this court to affirm the departure when there are alternative reasons in the record that would justify the departure, we must review the record for other grounds upon which the trial court could have properly based its decision to depart upwardly.

In *State v. Finn*, 391 N.W.2d 55 (Minn.App.1986), the court affirmed an upward durational departure from the presumptive sentence on the grounds that the defendant there demonstrated a "callous disregard for and a total indifference to" the consequences of alcohol abuse, the wishes of family members, the laws of the state, and the safety of others. *Id.* at 56. We believe the appellant has demonstrated very similar "callous disregard."

Appellant had prior experiences with drinking and driving. Presumably he knew he was over the legal limit for intoxication when he made the decision to drive. He also acted in direct defiance of the directions of his family members and the laws of the state by entering his sister's home without authorization, stealing her automobile, drinking in violation of his probation, having an open bottle of liquor in the car while he was driving, and driving without a valid license. Furthermore, he showed indifference to the safety of others by ignoring the pleas of his friend not to drive. The composite result of appellant's "callous disregard" was the tragedy which befell the victims.

We believe these additional factors combine to make appellant's conduct significantly more serious than that typically involved in the commission of the crime in question. The trial court's upward durational departure is affirmed.

Affirmed.

---

**5.** We also believe *State v. Felix,* 410 N.W.2d 398 (Minn.App.1987) can be distinguished from the present case. In *Felix,* the injuries were inflicted through gruesome, heinous cruelty. Other cases have also held that when the harm is inflicted in a particularly cruel manner, the departure can be justified on that ground. *State v. Anderson,* 345 N.W.2d 764, 766 (Minn.1984); *State v. Partlow,* 321 N.W.2d at 887 (Minn.1982). No such cruelty is present in this case.